982 F.2d 1215
 142 L.R.R.M. (BNA) 2168, 123 Lab.Cas. P 10,489
 Selman THOMAS, Jr., also known as Joe Thomas, Jr.; Lloyd
Anderson; David Bell; Dale John Burk; Dennis Canterbury;
John Conner; Curtis Cotton; Michael DeJaynes; Ressie
Estell; Paul Flower; David Foster; Donald Froien;
Lacinda George, Personal Representative of the Estate of
James George; Eddie Gill; Ivan Heesacker; Robert Hinsley;
Josephine James; Calvin Jewett; Ralph Johnson; Kent
Jorgesen; Patricia Livengood; Clyde Moore; Percy Moore;
James Nash; Robert Peters; John Pittman; Sylvio
Rebolloso; Jane Reed; Wayne Shaffar; Paul Stone; Rose
Mascarello, Personal Representative of the Estate of James
Thompson; James Walker; Clayton Welch; Ishanwee Wrenn;
Gerald Carew; Thomas Hayden; Melvin Wade, Jr.; William
Marsh; Mary L. Fillbach, Personal Representative of the
Estate of Robert Fillbach; Shirley Huston, Personal
Representative of the Estate of Lewis Huston, Appellants,
v.
BAKERY, CONFECTIONERY AND TOBACCO WORKERS INTERNATIONAL
UNION, LOCAL # 433; Metz Baking Company, Appellees,
Curtis Burton; Clark Cowing; Tom B. Miller; Donita Wimer;
Bernard Vontersch; Audrey Leahy; Joan Delesene; Mary L.
Ardery; Junior Lee Hoxsie; Annie C. Moore; Bob Herman;
Gary Wasinger; Barbara Wasinger; Mark Boro; Bessie
Sherrod; Richard Timperley; Thomas J. Mathis; William T.
Adams; Patrick Laughlin; Matthew L. Seeman; Mark
Martinez; Jim Hudson; John P. Gue; Larry Stryker; Kirk
Keller; Steve Keithley; Jack Hotz, Jr.; Margaret
Hilliard; Carlotta Chapman; Gary Kjar; Jan Hall; David
Kunkle; Ronald Black; Homer C. Jackson; Rondell Guffey;
Joy Southall; Janelle Swafford; Delores Urkevich; William
H. Bailey; Brenda J. Brown; Emma J. Martin; Dave Hawkins;
Dana McCoy; Donnie Parks; Bernie H. Bell; Edmon J.
Flury; Kathryn Nelson; Carolyn L. Dibelka; William J.
Miller; Taral E. Clift; L.Z. Steen; Douglas O'Leary;
Rodger Vordestrasse; Robert Heib; Tim Schneckloth; Alvin
Ward; Richard Lindaer; Harold Poppino; Mary Wright; Doug
Woodworth; Richard Wills; R.P. Moore; Fred Sherrill;
Riley A. Gunter; Richard Carter; Bob Wyskowski; Lorrie
Griffis; Barb Griffin; Richard Farris; Donna Adams,
Intervenors/Appellees.
Selman THOMAS, Jr., also known as Joe Thomas, Jr.; Lloyd
Anderson; David Bell; Dale John Burk; Dennis Canterbury;
John Conner; Curtis Cotton; Michael DeJaynes; Ressie
Estell; Paul Flower; David Foster; Donald Froien;
Lacinda George, Personal Representative of the Estate of
James George; Eddie Gill; Ivan Heesacker; Robert Hinsley;
Josephine James; Calvin Jewett; Ralph Johnson; Kent
Jorgesen; Patricia Livengood; Clyde Moore; Percy Moore;
James Nash; Robert Peters; John Pittman; Sylvio
Rebolloso; Jane Reed; Wayne Shaffar; Paul Stone; Rose
Mascarello, Personal Representative of the Estate of James
Thompson; James Walker; Clayton Welch; Ishanwee Wrenn;
Gerald Carew; Thomas Hayden; Melvin Wade, Jr.; William
Marsh; Mary L. Fillbach, Personal Representative of the
Estate of Robert Fillbach; Shirley Huston, Personal
Representative of the Estate of Lewis Huston, Appellees,
v.
Curtis BURTON; Clark Cowing; Tom B. Miller; Donita Wimer;
Bernard Vontersch; Audrey Leahy; Joan Delesene; Mary L.
Ardery; Junior Lee Hoxsie; Annie C. Moore; Bob Herman;
Gary Wasinger; Barbara Wasinger; Mark Boro; Bessie
Sherrod; Richard Timperley; Thomas J. Mathis; William T.
Adams; Patrick Laughlin; Matthew L. Seeman; Mark
Martinez; Jim Hudson; John P. Gue; Larry Stryker; Kirk
Keller; Steve Keithley; Jack Hotz, Jr.; Margaret
Hilliard; Carlotta Chapman; Gary Kjar; Jan Hall; David
Kunkle; Ronald Black; Homer C. Jackson; Rondell Guffey;
Joy Southall; Janelle Swafford; Delores Urkevich; William
H. Bailey; Brenda J. Brown; Emma J. Martin; Dave Hawkins;
Dana McCoy; Donnie Parks; Bernie H. Bell; Edmon J.
Flury; Kathryn Nelson; Carolyn L. Dibelka; William J.
Miller; Taral E. Clift; L.Z. Steen; Douglas O'Leary;
Rodger Vordestrasse; Robert Heib; Tim Schneckloth; Alvin
Ward; Richard Lindaer; Harold Poppino; Mary Wright;
Doug Woodworth; Richard Wills; R.P. Moore; Fred Sherrill;
Riley A. Gunter; Richard Carter; Bob Wyskowski; Lorrie
Griffis; Barb Griffin; Richard Farris; Donna Adams,
Intervenors/Appellants.
 Nos. 91-3549, 91-3553, 92-1563 and 92-1591.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 12, 1992.
Decided Dec. 31, 1992.
Judgment Denying Petition for Rehearing Feb. 12, 1993.
 
 Thomas G. Young, Omaha, NE, argued, for appellants.
 Robert MacDonald Smith, Sioux City, IA, and Neil B. Danberg and M.H. Weinberg, Omaha, NE, argued, for appellees.
 Before RICHARD S. ARNOLD, Chief Judge, WOLLMAN, Circuit Judge, and LARSON,* Senior District Judge.
 RICHARD S. ARNOLD, Chief Judge.
 
 
 1
 This is the end of a dispute which began in February of 1983 when the defendant, Metz Baking Company, purchased most of the assets of Interstate Brands Corporation (IBC). The purchase included the plant on Leavenworth Street in Omaha, Nebraska, where the plaintiffs, forty former employees of IBC, worked. The problem arose when Metz closed down its own Omaha bakery and transferred those employees to the Leavenworth plant. Metz then "end-tailed" the former IBC employees, which means it placed them at the bottom of the plantwide seniority list. Consequently, when Metz made labor adjustments to rectify the two-workforce, one-plant problem, it laid off the plaintiffs.
 
 
 2
 After an unsuccessful attempt at arbitration, the plaintiffs sued Metz and Local No. 433 of the Bakery, Confectionery, and Tobacco Workers Union--the union which represented all of the former employees of IBC and the employees of Metz.[1] The trial was bifurcated, with the idea that relief would be determined later if the jury found the defendants liable. The jury did find the defendants liable, but the District Court granted judgment n.o.v. for the defendants. On appeal, we reversed the judgment n.o.v. and remanded for a determination of appropriate relief. Thomas v. Bakery Workers Union Local No. 433, 826 F.2d 755 (8th Cir.1987), cert. denied, 484 U.S. 1062, 108 S.Ct. 1019, 98 L.Ed.2d 984 (1988). After a two-month trial, the District Court[2] awarded each plaintiff the equivalent of three months' wages less any income actually earned during that period. The plaintiffs make numerous arguments on appeal. We reject all of them and affirm the judgment of the District Court.
 
 I.
 
 3
 The District Court found the following passage from a footnote in our earlier opinion to be central to its resolution of damages:
 
 
 4
 The District Court should determine on remand who would have voted to ratify a negotiated solution to the consolidation problem. Determining who would have voted will help determine the range of solutions that would have been feasible, and this will help the Court determine what would have occurred but for the Union's failure to negotiate. Plaintiffs will bear the burden of proof, and if the evidence is simply too sketchy or uncertain to justify anything more than speculation, their remedy would be merely a declaratory judgment and perhaps nominal damages.
 
 
 5
 Thomas, 826 F.2d at 760 n. 1. Since Metz could not have kept all of the employees from both workforces, and the collective-bargaining agreement had no provision governing labor in the event of a corporate merger, the collective-bargaining agreement would have had to be modified. In footnote 1 we ordered the District Court to determine what that modification would have been if proper negotiations had in fact taken place.
 
 
 6
 The Court found that a modification would have legally end-tailed the former IBC employees. Thus, it held that Metz could have legally fired the plaintiffs as soon as the modification had been negotiated, proposed, and ratified, which, the Court found, would have been sometime in June. The plaintiffs were therefore entitled to recover for the loss they suffered during the three-month period from mid-March, when they were laid off, until mid-June, when they could have legally been laid off. Thomas v. Bakery Workers Union Local # 433, No. CV83-0-652, slip op. at 10-12 (D.Neb. October 11, 1991).
 
 II.
 
 7
 Plaintiffs first argue that the District Court erred in its application of footnote 1. They argue that the jury found that had negotiations taken place, the plaintiffs would never have been laid off, because any new agreement would have preserved their seniority rights. This, they add, is the law of the case, and this Court did not direct the District Court to re-examine the jury's determination as to the probable result of negotiations. Footnote 1, they claim, merely directed the District Court to apportion damages between the Union and Metz. Having written this passage, we disagree. First, the language in the footnote is not simply referring to an apportionment-of-damages matter. We expressly directed the District Court to determine "who would have voted to ratify a negotiated solution" so it could ascertain what would have occurred--that is, what the solution would have been--but for the failure to negotiate. Second, the plaintiffs have mischaracterized what the jury decided. Contrary to the plaintiffs' argument, the jury did not find that an agreement preserving the plaintiffs' jobs would have been reached, but that they would not have been laid off in March had the Union negotiated. Appellant's Add. 107-08. In fact, the jury was never asked to resolve the dilemma between the Metz workers and the IBC workers or to decide who would have ended up with jobs after negotiations.
 
 
 8
 This brings us to plaintiffs' alternative argument, which is that the District Court erred in holding that the plaintiffs would have been end-tailed if negotiations had taken place. First, they argue, the only persons who would have been entitled to vote to modify the collective-bargaining agreement were the original employees at the Leavenworth plant, that is, the plaintiffs. Second, even if both Metz and IBC employees had voted, there was not enough evidence to support the District Court's determination. We disagree.
 
 
 9
 First, Metz purchased IBC and transferred its employees to the Leavenworth plant. The collective-bargaining agreement, which governed both workforces, could be modified only by a majority vote of the members affected. See Thomas v. Bakery Workers Union Local No. 433, No. CV83-0-652, slip op. at 9 (D.Neb. October 11, 1991). Both workforces were affected; both were entitled to vote. It is unfortunate for the plaintiffs that IBC was bought out by another corporation complete with its own workforce, but Metz's decision to keep open the former IBC plant rather than the Metz plant does not change the fact that Metz's actions and any resultant modification would have had an impact on both workforces. Both would have voted.
 
 
 10
 We also reject the sufficiency-of-the-evidence claim. At the time of the merger, there were seventy-nine to ninety-two Metz employees and forty-one to sixty IBC employees who would have been entitled to vote on a modification. The defense presented seventy-nine affidavits of Metz employees stating that they would have voted to end-tail the plaintiffs. Only a majority vote would have been necessary to modify the agreement. The District Court's decision was amply supported by the evidence.III.
 
 
 11
 The third claim raised by the plaintiffs is that the District Court erred in its handling of certain procedural matters: the Court should not have allowed the defendants to amend their answers to add the affirmative defense of mitigation of damages; and it should not have permitted intervention by the Metz employees. Plaintiffs claim that in February of 1985, at the first pre-trial conference, the trial judge said that since mitigation had not been pleaded, he was not going to allow either defendant to amend its pleadings to add this affirmative defense. The plaintiffs add that the undue delay, more than two years after the original filing of the defendants' answers, prejudiced them. The plaintiffs miss the mark on the undue-delay claim. The defendants filed these amendments immediately after we remanded the case for a determination of the appropriate remedy, before any pre-trial discovery. The plaintiffs had nearly two years to conduct discovery on this issue. This is not undue delay. More importantly, no one except plaintiffs' counsel remembers an order permanently disallowing a mitigation-of-damages amendment. In fact, the judge, in response to a letter from the plaintiffs on the issue, said
 
 
 12
 My usual procedure would have been to reduce rulings to writing if they were to be regarded as establishing the law of the case. Also, since we were deferring the issue of damages ... I am uncertain as to why I would have made such a ruling at that point in time....
 
 
 13
 Union's Brief 53. We therefore reject the plaintiffs' argument that the District Court erred in allowing the defendants to add the affirmative defense to their answers. We cannot enforce an alleged off-the-record order as to which recollections differ.
 
 
 14
 The plaintiffs next argue that the District Court abused its discretion in allowing seventy-nine Metz employees to intervene in this action. They claim that the intervenors' rights had already been determined in the liability trial, and anyway, it was too late to intervene. We reject the plaintiffs' arguments. The intervenors' rights were not determined in the liability trial. The Metz employees' seniority rights were not in issue. In any event, any rights the intervenors had were adequately protected by Metz in the liability phase of the trial, since Metz was defending its action in end-tailing the plaintiffs, an action the Metz employees approved of. The intervenors had a substantial interest in the remedy phase of the trial, however, since a decision to reinstate the plaintiffs, dove-tail them with the Metz employees, or end-tail the Metz employees would substantially affect their rights. Moreover, Metz would not have protected their interests adequately, because it might have favored reinstatement of the plaintiffs to lessen its damages. The motion was timely since it was filed immediately after we remanded the case for the determination of relief, precisely the element of this action in which the intervenors had an interest.
 
 IV.
 
 15
 The plaintiffs' next argument is that the District Court erred in denying attorneys' fees and prejudgment interest. With regard to attorneys' fees, the plaintiffs claim that we had already found the Union guilty of bad faith. Therefore, they reason, the District Court was required to award attorneys' fees. The plaintiffs are straining a bit on this argument. The question of bad faith sufficient to justify an award of attorneys' fees was never before this Court. Assuming for the sake of argument that it was before us and that we found bad faith, whether or not to award attorneys' fees was still within the District Court's discretion, and we do not think that discretion was abused here.
 
 
 16
 With respect to the prejudgment interest, the plaintiffs argue that the District Court abused its discretion by denying it since, they claim, it is ordinarily granted absent bad faith, dilatoriness, or the assertion of frivolous claims on the part of the plaintiff. Plaintiffs have misstated the proper legal standard. Like attorneys' fees, an award of prejudgment interest is within the discretion of the trial judge; it is never automatic. We see no evidence here that the District Court abused its discretion.
 
 V.
 
 17
 Finally, the plaintiffs argue that the District Court erred in computing damages by not including in its calculations overtime pay, vacation pay, pension contributions, earned work credit payments, health-insurance benefits, and life-insurance benefits. The plaintiffs did not, however, document any specific health or life-insurance benefits that should have been paid during the three-month period but were not. In fact, they did not request any specific amount at all. We have thoroughly searched the record for discrepancies, but have found nothing to cause us to believe the calculation by the District Court was clearly erroneous. In fact, the Court awarded most of the plaintiffs more than their own calculations for the second quarter of 1983--including overtime pay, health and life-insurance benefits, and vacation pay--indicated was appropriate. Additionally, none of the plaintiffs claimed that medical expenses or life-insurance benefits were even owed for the months of March through June of 1983. The District Court was also correct not to include an amount for pension contributions. Metz makes a contribution in a good year only. A good year means that the employee worked at least 1800 hours that year. None of the plaintiffs would have accumulated 1800 hours by mid-June. In conclusion, we are not persuaded that the District Court's calculation of damages is clearly erroneous.
 
 VI.
 
 18
 In light of our decision, it is unnecessary to address the arguments of the intervenors. Our affirmance on the merits of the main appeal necessarily means that plaintiffs have no seniority rights superior to those of the intervening group of Metz employees.
 
 
 19
 Affirmed.
 
 Judgment
 
 20
 Feb. 12, 1993.
 
 
 21
 The suggestion for rehearing en banc is denied. The petition for rehearing is also denied.
 
 
 22
 Judge Beam took no part in the consideration or decision of this case.
 
 
 
 *
 The Hon. Earl R. Larson, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 Plaintiffs sued the Union for violating its duty of fair representation and Metz for committing a breach of the collective-bargaining agreement. For a full discussion of the liability trial, see Thomas v. Bakery Workers Union Local No. 433, 826 F.2d 755 (8th Cir.1987), cert. denied, 484 U.S. 1062, 108 S.Ct. 1019, 98 L.Ed.2d 984 (1988)
 
 
 [2]
 The Hon. Lyle E. Strom, Chief United States District Judge for the District of Nebraska