John BRENNAN; James G. Ahearn; Kurt Brunkhorst, Intervenors–Appellants,

v.

N.Y.C. BOARD OF EDUCATION; Department of Citywide Administrative Services; William J. Diamond, Personnel Director, New York City Department of Personnel (in his official capacity); 115–13 120th Street, Defendants–Appellees,

United States of America, Plaintiff–Appellee.

Docket No. 00–6077.

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 2000.

Decided Aug. 3, 2001.

Michael E. Rosman, Center for Individual Rights, Washington, DC, (George W.C. McCarter, McCarter & Higgins, Shrewsbury, New Jersey, of counsel), for Intervenors–Appellants.

Alan Beckoff (Michael D. Hess, Corporation Counsel of the City of New York, and Stephen J. McGrath, of counsel), New York, NY, for Defendants–Appellees.

Lisa Wilson Edwards, United States Department of Justice, Civil Rights Division (Bill Lann Lee, Acting Assistant Attorney General, and Dennis J. Dimsey, of counsel), Washington, DC, for Plaintiff–Appellee.

Before: CARDAMONE, WINTER, and POOLER, Circuit Judges.

WINTER, Circuit Judge:

John Brennan, James G. Ahearn, and Kurt Brunkhorst appeal from Magistrate Judge Levy's denial of their motion to intervene as of right, pursuant to Fed. R.Civ.P. 24(a)(2). *See United States v. New York City Bd. of Educ.*, 85 F.Supp.2d 130, 154–56 (E.D.N.Y.2000). The underlying action was brought by the United States against the New York City Board of Education and certain City officials (collectively "Board"). The complaint alleged employment discrimination. The parties— the government and the Board—reached a settlement agreement ("Agreement") and moved for a fairness hearing and approval in the district court. The Agreement contained provisions that conferred certain employment rights on a number of persons who are African American, Hispanic, Asian, or female. Appellants, white, male employees of the Board, sought to intervene. They claimed that intervention was necessary to protect their present employment status—in particular, their seniority rights. The district court denied the intervention motion on the ground that appellants could not assert a cognizable interest under Rule 24(a)(2) because they had presumptively obtained their employment status as a result of discrimination, they had no property right in that status, and any adverse effect of the Agreement was remote and speculative. *See id.* at 155–56. We disagree and reverse.

## BACKGROUND

In bringing the underlying action pursuant to Section 707(a) of Title VII, 42 U.S.C. § 2000e–6(a), the government alleged a pattern and practice of racial and gender discrimination by the Board in its hiring and recruitment practices with respect to the positions of Custodian and Custodian Engineer. These positions appear to have a hierarchical relationship, with Custodian Engineer being the superior job.[1] Before one becomes a permanent Custodian or Custodian Engineer with seniority rankings, one must serve what is essentially a probationary period as a provisional Custodian or provisional Custodian Engineer.

The complaint alleged, *inter alia,* that the Board engaged in discrimination by: (i) failing to recruit females and minorities

---

1. The record is unclear as to whether there is some formal or informal progression from a Custodian position to a Custodian Engineer position. This issue is not dispositive at this stage of the proceedings and can be clarified on remand.

on the same basis as white males; (ii) failing to hire and promote minorities on the same basis as whites; and (iii) using civil service exams—which determine the order of hiring and promotion and, therefore, seniority—that had a negative, disparate impact on black and Hispanic applicants.

After discovery and negotiations, the government and the Board executed the Agreement. In pertinent part, the Agreement required the Board to confer permanent civil service status on forty-three provisional African American, Hispanic, Asian, and female Custodians and Custodian Engineers, and to provide retroactive seniority to them and an additional eleven employees (fifty-four in all) of similar backgrounds (collectively "Offerees").

The Agreement would benefit the Offerees in the following ways. The salary of a Custodian or Custodian Engineer is discounted at various levels during the first five years of an individual's employment. Retroactive seniority would entitle an Offeree to a higher salary, i.e., a smaller discount. Moreover, the larger the building in which a Custodian or Custodian Engineer works, the higher the salary. As a result of a collective bargaining agreement, transfers to larger buildings are based generally on a formula that uses both seniority and performance ratings. In practice, 90% of actual transfers are based on the transferee's seniority. Finally, permanent civil service status benefits an Offeree by allowing him/her to bypass provisional status in which the employee has no protected rights.

As claimed by appellants, the pertinent principal effects of the Agreement on other employees appear to be two-fold. First, other Custodians or Custodian Engineers will have less seniority relative to Offerees moved above them and may therefore fail to obtain a desired transfer to a larger building. Second, permanent Custodian Engineers have seniority rights whereas provisional Custodian Engineers are probationary employees.[2] According permanent status as a Custodian Engineer to an Offeree may result in the Offeree's displacing a provisional Custodian Engineer, who may return to a permanent Custodian position.

The parties moved the district court to hold a fairness hearing at which objections to the Agreement would be heard. *See* 42 U.S.C. § 2000e-2(n) (preventing challenge to employment practices implementing consent judgment provided notice and opportunity to object are given). Various employees, including appellants, filed objections to the proposed Agreement on numerous grounds. Appellants, who were permanent Custodians and/or provisional Custodian Engineers, also moved to intervene as of right, pursuant to Fed.R.Civ.P. 24(a)(2),[3] on the ground that the Agreement was unconstitutional. They claimed that the Agreement was impermissibly based on race, ethnicity, and gender and would result in some or all of them losing their status as provisional Custodian Engineers and/or their relative seniority rights as Custodians and/or Custodian Engineers. The district judge referred the matter to

---

**2.** It is unclear from the record whether provisional Custodian Engineers also have seniority rights. In any event, probationary employees would always have less seniority than permanent employees.

**3.** "Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed.R.Civ.P. 24(a)(2).

128

Magistrate Levy to conduct a fairness hearing, and the government and the Board then consented to have the case referred to Magistrate Levy for all purposes, pursuant to 28 U.S.C. § 636(c).

Magistrate Levy received expert declarations and held a fairness hearing, at which employees of·the Board who filed timely objections to the Agreement had an opportunity to raise their concerns, while the government and the Board presented arguments in favor of entry of the Agreement.

The district court found that the government had made a prima facie showing on each of its discrimination claims; that the remedies proposed in the Agreement were fair, reasonable, and legal; and that none of the objections had sufficient merit to overcome the "presumption of validity" that the district court accorded to the Agreement. 85 F.Supp.2d at 157.

The district court also denied appellants' motion to intervene. It reasoned that they had· presumptively obtained their seniority rights as a result of discrimination. It further concluded that appellants had no legally protectable interest in their employment status or seniority rankings. Specifically, the district court held that "a civil servant has no vested property right in a particular position or appointment, and 'a person on an eligibility list does not possess any mandated right to appointment or any other legally protectible interest.'" 85 F.Supp.2d at 155 (quoting *Kirkland v. New York State Dep't of Corr. Servs.*, 711 F.2d 1117, 1134 (2d Cir.1983) (internal quotation marks omitted)).

The district court further held that "[e]ven if the proposed intervenors could assert some cognizable interest in their seniority rights, that interest would be remote and speculative." *Id.* at 156. It based this conclusion on the perceived unlikelihood that any of the fifty-four Offer-ees would compete with any of the appellants for a transfer to a particular building and obtain the transfer as a result of the retroactive seniority. For such a result to occur, the court reasoned, several events would need to converge: (i) one of the Offerees and one of the appellants would have to request the same transfer; (ii) each would have to have the same job title (i.e., Custodian or Custodian Engineer); (iii) the performance ratings of the Offeree and the appellant would have to be quite close; and (iv) the Offeree and the appellant would have to hold the first and second spots, respectively, on the transfer list for the particular building. The district court held, therefore, that appellants' interest in their seniority rankings was not ·"direct, substantial, and legally protectable," *id.* at 156 (internal quotation marks omitted), denied appellants' motion to intervene, and approved the Agreement.

This appeal followed.

## DISCUSSION

■ "We review the denial of ... the motion for intervention as of right under Fed.R.Civ.P. 24(a) ... for abuse of discretion." *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir.1992); *accord United States v. Glens·Falls Newspapers, Inc.*, 160 F.3d 853, 854 (2d Cir.1998) ("We have jurisdiction of an appeal from an order which denies·intervention. Our review invokes the abuse of discretion standard." (internal citations omitted)). "Errors of law or fact may constitute such abuse." *SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79, 81 (2d Cir.2000).

■ To intervene as of right, a movant must: "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected

adequately by the parties to the action." *Kheel,* 972 F.2d at 485. The timeliness of appellants' motion to intervene is not questioned.

█ Turning to the nature of appellants' interest in the underlying action, we have stated that, for an interest to be cognizable under Rule 24(a)(2), it must be "direct, substantial, and legally protectable." *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d Cir.1990); *accord Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) (requiring "significantly protectable interest"), *superceded by statute on other grounds as stated in United States v. New York Tel. Co.,* 644 F.2d 953, 956 (2d Cir.1981); *Kheel,* 972 F.2d at 486; *Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.,* 725 F.2d 871, 874 (2d Cir.1984) ("[S]uch an interest must be direct, as opposed to remote or contingent."). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Washington Elec.,* 922 F.2d at 97.

Appellants assert that they have a cognizable interest both in their status as provisional Custodian Engineers and in their contractual seniority rights as Custodians and Custodian Engineers. Because permanent Custodian Engineers have seniority over provisional Custodian Engineers, the former may replace the latter at any time. Appellants claim that, on the one hand, were they to be replaced as Custodian Engineers and returned to their positions as Custodians, they would have reduced seniority relative to the Custodian Offerees as a result of the Agreement. On the other hand, if they remained provisional Custodian Engineers and achieved permanent status in that position, they would have less seniority than the Offerees who

became permanent Custodian Engineers with retroactive seniority.

As noted, the district court held that appellants' interests were not cognizable under Rule 24(a)(2) because: (i) their seniority rights and employment status relative to the Offerees had presumptively been obtained as a result of illegal discrimination; (ii) they had no property or other legally protectable interest in their status as provisional Custodian Engineers or seniority as Custodians; and (iii) their interest in their seniority rights was too remote and speculative to support intervention under Rule 24(a)(2). We disagree and address each rationale in turn.

█ With regard to whether appellants lack a cognizable interest in their employment status and seniority rights because these benefits were presumptively obtained as the result of discriminatory practices, we believe that the district court's ruling put the cart before the horse. As we have stated,

[E]xcept for allegations frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention, but rather turns on whether the applicant has demonstrated that its application is timely, that it has an interest in the subject of the action, that disposition of the action might as a practical matter impair its interest, and that representation by existing parties would not adequately protect that interest.

*Oneida Indian Nation v. New York,* 732 F.2d 261, 265 (2d Cir.1984) (internal citation omitted). Thus, while the presumption of validity of a settlement agreement may shift the burden of showing invalidity to non-party objectors, it carries no weight in the determination of whether an interest is sufficient for intervention under Rule

24(a). *See generally Kirkland,* 711 F.2d at 1126–28. The sufficiency of an interest entitles the intervenor to contest the merits of his/her claim based on that interest. An interest that is otherwise sufficient under Rule 24(a)(2) does not become insufficient because the court deems the claim to be legally or factually weak. In the present case, it is precisely the existence or non-existence of prior discrimination and its relationship to appellants' present status that they want to contest by intervening as parties. The merits can, therefore, be resolved only after appellants have an opportunity for discovery and the presentation of evidence as a party to the action.[4]

■ We turn now to appellees' argument that denial of intervention was proper because of appellants' lack of a property or other legally protectable interest in their employment status. Initially, we address this claim with respect to appellants' status as provisional Custodian Engineers and thereafter discuss it in the context of their seniority rights. Under New York law, appellants have no property or other protectable legal interest in their status as provisional Custodian Engineers. *See Meyers v. City of New York,* 208 A.D.2d 258, 622 N.Y.S.2d 529, 532 (2d Dep't 1995) ("It is well settled that a probationary employee, unlike a permanent employee, has no property rights in his position ....."); *see also York v. McGuire,* 63 N.Y.2d 760, 761, 480 N.Y.S.2d 320, 469 N.E.2d 838 (1984). However, Rule 24(a)(2) "does not require that the intervenor prove a property right, whether in the constitutional or any other sense." *United States v. City of Chicago,* 870 F.2d 1256,

1260 (7th Cir.1989). Indeed, *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York,* 516 F.2d 350, 351–52 (2d Cir. 1975) (per curiam), held that the Pharmaceutical Society of the State of New York, Inc. and three individual pharmacists had standing to intervene as of right in an action challenging the legality of a regulation prohibiting advertising the price of prescription drugs, even though the interest asserted-the economic interest of pharmacists in sustaining the regulation-clearly did not constitute a property right.

■ Rule 24(a)(2) requires not a property interest but, rather, "an interest relating to the property or transaction which is the subject of the action." Appellants have such an interest in the Agreement. Appellants are asserting claims that are the mirror image of the claims asserted by the government. The government alleges that race/ethnicity/gender discrimination prevented the Offerees from obtaining positions as permanent Custodians and Custodian Engineers and that the remedy provided by the Agreement merely restores them to positions they would have held but for such discrimination. Appellants claim the race/ethnicity/gender-conscious remedy is not justified by any demonstrated past discrimination and that their loss of relative seniority as a result of the Agreement is itself impermissible discrimination.

The claims asserted by the government and appellants, therefore, are based on identical legal theories, the difference between them being entirely in the issue of

---

4. As noted, in approving the settlement, the Magistrate Judge relied upon evidentiary submissions, including two expert declarations that it described as not only unrebutted but also unchallenged. However, appellants have had no opportunity to take discovery, including the depositions of the experts. We also note that at least one reason the declarations were unrebutted and unchallenged was that they were served some weeks after objections were due and only days before the fairness hearing. In fact, one declaration was sent to the court via Federal Express only two days before the hearing.

whether the remedy restores circumstances that would have existed but for discrimination or is itself discrimination. Whether appellants or the Offerees have a property right in the position of provisional Custodian Engineer simply has nothing to do with that issue from either point of view. While it is the case that a provisional Custodian Engineer might not be entitled to procedural due process in a termination proceeding based on poor performance because of a lack of a property interest, *see Meyers,* 622 N.Y.S.2d at 532, an adverse employment action based on race, ethnicity, or gender is clearly illegal. To hold otherwise would require civil rights plaintiffs generally to show a property interest in the position in question. We note that we have held in the past that, where a proposed intervenor's interests are otherwise unrepresented in an action, the standard for intervention is no more burdensome than the standing requirement, *see United States Postal Serv. v. Brennan,* 579 F.2d 188, 190 (2d Cir. 1978), and that appellants' interest in the underlying action and the Agreement is for purposes of standing identical to that of the Offerees.

■ The preceding discussion is of course equally applicable to appellants' seniority rights as both Custodians and Custodian Engineers, but we note also that seniority rights are for many purposes legally cognizable rights. "Seniority is a contractual right, and a competitive seniority system establishes a hierarchy of such rights according to which various employment benefits are distributed." *Lorance v. AT & T Techs., Inc.,* 490 U.S. 900, 905, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989) (internal quotation marks, citations, emphasis, and alterations omitted), *superceded by statute on other grounds as stated in Landgraf v. USI Film Prods.,* 511 U.S. 244, 251, 114 S.Ct. 1483, 128 L.Ed.2d 229

(1994). Appellants, therefore, have "an interest relating to the [Agreement]."

■ Finally, we turn to the district court's conclusion that, even if appellants could assert an interest in seniority rights that otherwise would be cognizable under Rule 24(a)(2), it would be too "remote and speculative" to permit intervention as of right, chiefly because of the alleged unlikelihood of a confluence of events resulting in the foreclosure of an appellant by an Offeree for a building transfer. 85 F.Supp.2d at 156. We again disagree.

We agree with the caselaw in numerous other circuits holding that the kind of interest asserted by appellants here is cognizable under Rule 24(a)(2). *See, e.g., United States v. City of Hialeah,* 140 F.3d 968, 982 (11th Cir.1998) ("[T]he retroactive seniority provision's threat to the objectors' competitive seniority benefits prevented entry of the consent decree. The objectors were not required to prove with certainty that particular employees would lose contractual benefits."); *Edwards v. City of Houston,* 78 F.3d 983, 1004 (5th Cir.1996) (en banc) (holding interest in equal access to promotion system and promotion opportunities justifies intervention); *Thomas v. Bakery, Confectionery & Tobacco Workers Int'l Union,* 982 F.2d 1215, 1220 (8th Cir. 1992) ("The Metz employees' seniority rights were not in issue [during the liability phase of the trial].... The intervenors had a substantial interest in the remedy phase of the trial, however, since a decision to reinstate the plaintiffs, dove-tail them with the Metz employees, or end-tail the Metz employees would substantially affect their rights."); *Dawson v. Pastrick,* 600 F.2d 70, 75 (7th Cir.1979) ("The union in this case was allowed to intervene to protect the interests of majority firefighters in their promotional seniority rights.... Although ... no majority fireman has as yet been denied a promotion

because of the court's decree, the remedy granted makes such an event a distinct possibility."); *Stallworth v. Monsanto Co.,* 558 F.2d 257, 268–69 (5th Cir.1977) (holding that if, on remand, it was shown that employees had contractual relationship that covered seniority rights, interest requirement of Fed.R.Civ.P. 24(a)(2) would be satisfied). *But cf. Dilks v. Aloha Airlines, Inc.,* 642 F.2d 1155, 1157 (9th Cir. 1981) (per curiam).

There is good reason for the existence of this body of caselaw. The district court focused solely on the question of whether any appellant would lose a building transfer directly to one of the Offerees. That is not the proper focus, however, because the exercise of seniority rights has a domino effect. If an Offeree obtains a desirable transfer, all comparable employees with more seniority than an appellant but less than that of the Offeree may seek transfers at the next level of desirability, thereby foreclosing the particular appellant. The effects of the loss of relative seniority are not easily forecast and may not even be perceived as they happen. To take an alphabetical example, if employee Z is moved up to just above employee A, then the effects of that move on employee T will turn on the preferences of employees A through S. Where transfers among buildings are concerned, size (and therefore salary) will be important in determining whether an employee will exercise seniority to seek a transfer, but some employees will also be motivated by other factors, such as location. If employee Z secures a transfer, a chain reaction will begin with various openings and transfers occurring based on a variety of decisions by A through S. After all is played out, employee T may well find it impossible to reconstruct what transfer might have been available to him/her but for the moving-up of employee Z.

■ An appellant's loss of a desirable transfer need not be directly to an Offeree, therefore, for the loss to be the result of the Agreement. That being the case, the effects of a loss of relative seniority rights should not be regarded as too speculative and remote to justify intervention[5] save, perhaps, in a case where a concrete effect on an employee is impossible. That is clearly not the case here.

Similarly, appellants' interest in the diminution of their seniority rights is not "remote" from the subject matter of this action and would not "inject collateral issues." *Kheel,* 972 F.2d at 486 (internal quotation marks omitted). Here, the loss of appellants' relative seniority rights—ineluctably the result of the proposed Agreement—is central, rather than collateral, to the Agreement.

Appellants have thus satisfied the second requirement for intervention under Rule 24(a)(2). For the same reasons, appellants have also adequately "demonstrate[d] that the interest may be impaired by the disposition of the action," *Kheel,* 972 F.2d at 485, the third requirement.

■ With regard to the last requirement of Rule 24(a)(2)—a showing "that the interest is not protected adequately by the parties to the action," *Kheel,* 972 F.2d at 485—the Board argues that its presence as a party adequately represented appellants' interests. We disagree. The test here is not whether the Board did well on behalf of appellants—an inquiry that would require exploration of the merits—but

---

**5.** In response to a question at oral argument, counsel for the government argued that if an appellant were in the future to lose a desired transfer, that appellant might challenge the legality of the Agreement at that time. In a post-argument letter, the government withdrew from that position.

whether the Board's interests were so similar to those of appellants that adequacy of representation was assured. *See Washington Elec.,* 922 F.2d at 98. We find no such congruence of interests here. In litigation such as the present case, an employer may have an interest in defending its hiring and other practices or in retaining certain incumbents in their jobs. However, it may have an equally strong or stronger interest in bringing such litigation to an end by settlements involving the displacement of employees who are not parties to the action. The employer may, in short, behave like a stakeholder rather than an advocate. Indeed, in the present case it appears that the entire burden of the settlement—there is no back pay award to the Offerees—is upon individuals like appellants.

Appellants are, therefore, to be granted intervention. They should be accorded discovery and other rights with regard to their claim that any impairment by the Agreement of their interests in their positions as provisional Custodian Engineers and in their seniority rights as Custodians and Custodian Engineers would constitute impermissible discrimination rather than a proper restorative remedy based on past discrimination against the Offerees.

Appellants also ask us to exercise discretionary jurisdiction and rule on the merits of the Agreement, rather than remand the case to the district court. *See Kaplan v. Rand,* 192 F.3d 60, 67 (2d Cir. 1999) ("Although the general rule is that only a party of record may appeal a judgment, a nonparty may appeal when the nonparty has an interest that is affected by the trial court's judgment" (internal quotation marks omitted)). We think such a course would be ill-advised.

Appellants have argued convincingly that they were denied the opportunity to develop a record that would have permitted a full and appropriate ruling on the fairness and constitutionality of the Agreement. Given the heavily factual nature of these issues, we believe that the best course is to remand the case to allow for a full development of the record.

## CONCLUSION

We therefore vacate the order denying the motion to intervene and approving the Agreement and remand with instructions to the district court to permit appellants to intervene.