[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, the Commission on Human Rights and Opportunities ("CHRO"),[1] appeals from a final decision of August 14, 2000 rendered by a human rights referee of the CHRO in favor of the defendant, City of Hartford ("the city"). In the complaints to the CHRO, John C. Donahue and John Cooper, the complainants, alleged that they were not promoted due to race and sex in violation of General Statutes §§ 46a-58 (a), 46a-60
(a)(1) and 46a-60 (a)(4); and Title VII of the Civil Rights Act of 1964,42 U.S.C. § 2000e et seq. The CHRO's appeal from the decision of the human rights referee is authorized by General Statutes §§ 46a-94a and4-183 of the Uniform Administrative Procedure Act ("UAPA").
The complainant Donahue's May 23, 1997 allegations[2] that, as a white, he was wrongly denied promotion from the city fire department's eligibility list[3], were investigated, and a certification of reasonable cause was made by the CHRO on August 10, 1998. (Return of Record ("ROR"), Volume 13, Item 180, p. 2317.) After the failure of conciliation efforts, the complaint was certified to the office of public hearings where a hearing was held on various dates in January, 2000. (ROR, Volume 1, Item 4, p. 33.) CT Page 13468-fa
The relevant findings of fact made by the human rights referee after the hearing are as follows:
 2. The Hartford Fire Department provides fire suppression and other fire related services to the City of Hartford. . . .
 3. The Hartford Fire Department is currently budgeted for 400 employees, but rarely is at full strength.
 4. Mr. Robert Dobson was appointed Fire Chief of the Hartford Fire Department by the Hartford City Manager in April of 1995. . . .
 * * * 8. Ms. Patricia Washington has worked for the City of Hartford for many years. She is currently Director of Personnel for the City of Hartford and has held this position for approximately twelve years.
 9. The City of Hartford's Charter, Chapter XVI, Section 6, provides that the Personnel Rules and Regulations adopted in accordance with the provisions of this Chapter shall have the force and effect of law. Among other things, they shall provide for the method of holding competitive examinations; the method of certifying eligible candidates for appointment; the establishment, maintenance, consolidated and cancellation of eligible lists.
 10. Promotions in a classified service, such as the Hartford Fire Department, are made according to merit and fitness, which is determined by conducting a competitive examination. . . .
 11. The City of Hartford's Charter, Chapter XVII, Section 2(b), authorizes the Director of Personnel to maintain eligible lists based on competitive examinations for each position in a classified service. Whenever a vacancy is to be filled, the names of the three (3) persons CT Page 13468-fb standing highest on the eligible list applicable to the position in question are certified to the appointing officer. Except that in cases where there are fewer than three (3) persons on an eligible list, the Director of Personnel may certify the names of all persons on the list. No appointment can be made to any position in the classified service except for these lists. . . .
 * * * 13. Chief Robert Dobson is the appointing officer for the Hartford Fire Department. . . .
 16. Under the City of Hartford's Charter, an eligible register! "certification list" remains in effect for a maximum of two (2) years, from the date on which it is established. Once an eligible register/"certification list" expires, no more promotions can be made from that register/"list". . . .
 17. As promotional vacancies occur within the Fire Department, the Director of Personnel, Patricia Washington, certifies to the department head, names from the eligible register/"certification list". . . . [T]he Director of Personnel certifies to Chief Robert Dobson two names more than the number of vacancies. . . .
 * * * 20. When an eligible register! "certification list" is set to expire, the staff of the Personnel Department notifies the appointing authority. . ..
 21. If a department head would like to extend the eligible register/"certification list" (s)he must provide the Director of Personnel with a reason for the requesting an additional six month extension. . . .
 22. The Director of Personnel, based on the input from the department head/appointing authority then CT Page 13468-fc makes a written request to the Personnel Board recommending that the eligible register/"certification list" be extended for an additional period of time. . . .
 23. If the department head does not want the eligible register/"certification list" to be extended, then (s)he must notify the Director of Personnel. In that instance, the Director of Personnel does not make a request to extend the register/"list" to the Personnel Board, the eligible register/"certification list" will expire on its expiration date.
 24. The Hartford Personnel Board decides whether the eligible register/"certification list" will be extended in accordance with the Personnel Rules and Regulations. . . .
 26. On August 3, 1994, an eligible register/"certification list" was established by the Personnel Department of the City of Hartford for the position of fire lieutenant. . . .
 27. Also on August 3, 1994, the names of the 32 individuals standing highest on the eligible register/"certification list" were certified to Fire Chief Robert Dobson. . . .
 28. On August 7, 1994, 31, candidates were promoted to the position of fire lieutenant by Fire Chief Robert Dobson. . . .[4]
 29. On May 7, 1996, Ms. Patricia Washington, Director of the Personnel Department, sent a memorandum to the Personnel Board indicating that she concurred with Chief Robert Dobson's request to extend the 1994 fire lieutenants eligible register/"certification list". . . .
 30. The three (3) candidates who were next in line on the 1994 fire lieutenants eligible register/"certification list" . . . all requested that the eligible register be extended for a period of one (1) year. CT Page 13468-fd
 31. The request by Ms. Patricia Washington for the 1994 fire lieutenants eligible register/"certification list" to be extended was considered by the Hartford Personnel Board at its meeting of June 18, 1996. . . .
 32. At this meeting, Hartford Personnel Board Chairman, Francisco DeJesus requested a breakdown of the number of Hartford residents and minorities on the 1994-fire lieutenant's eligible register/"certification list". . . .
 33. Personnel Board member Ms. Annika Warren made a motion to extend the 1994 fire lieutenant's eligible register/"certification list" for six (6) months. . . . [T]he Personnel Board voted to extend the 1994 fire lieutenant's eligible register/"certification list" for six (6) months. The six (6) month extension meant that the register/"list" now expired on February 3, 1997. . . .[5]
 36. In December of 1996, a number of individuals who remained on the 1994 fire lieutenant's eligible register/"certification list" wrote a letter to Fire Chief Robert Dobson requesting that the register/"list" be extended for a second six months or until August 3, 1997.
 37. On January 27, 1997, the Personnel Board of the City of Hartford held a special meeting to consider whether to extend the 1994-fire lieutenant's eligible register/"certification list". . . . The Hartford Personnel Board took no action because there was no request for an extension from either Personnel Director Ms. Patricia Washington or Fire Chief Robert Dobson. . . .
 38. At the January 27, 1997, meeting Ms. Washington was asked by Hartford Personnel Board Chairman, Mr. Larry Reynolds, to explain why Fire Chief Robert Dobson had not requested that the 1994 fire CT Page 13468-fe lieutenant's eligible register/"certification list" be extended for a second six months. Ms. Patricia Washington responded that the fire chief indicated to her that he did not favor an extension because he did not intend to make any appointments to the position of fire lieutenant in the near future. . . .
 * * * 44. On September 5, 1996, four individuals from the 1994 fire lieutenant's eligible register/"certification list" were certified to the Hartford Fire Department for consideration for two promotional vacancies . . . Frank Carter, Jr. and Miguel Sanchez[6], were appointed on September 22, 1996. . . .
 45. On September 30, 1998, an eligible register/"certification list", for the position of fire lieutenant, was established by the Personnel Department.
 * * * 47. Mr. John C. Donahue, who is white, was promoted to the position of fire lieutenant effective April 23, 2000. . . .
 * * * 56. Fire Chief Robert Dobson never discussed the racial and ethnic makeup of the remaining candidates on the 1994 fire lieutenants eligible register/"certification list" with any member of the Hartford Personnel Board.
 57. During his tenure with the Hartford Fire Department, Fire Chief Robert Dobson's policy was to extend all eligible register/"certification lists" for six months rather than a year. . . .
 * * * 75. Mr. John C. Donahue testified that when the Hartford Personnel Board voted on whether to extend the 1994 fire lieutenant eligible CT Page 13468-ff register/certification list" for the second six month period, there were no vacancies in the position of fire lieutenant in the Hartford Department. . . .
 * * * 85. Mr. John C. Donahue testified . . . that he had no information or proof that Fire Chief Robert Dobson had any knowledge of the race, sex, or ethnicity of candidates on the 1994 fire lieutenant's eligible register/"certification list". . . .
 * * * 129. Fire Chief Robert Dobson promoted 31 candidates to the position of fire lieutenant before the 1994-fire lieutenant's eligible register/"certification list" expired on February 3, 1997. Of the total, the breakdown by race, sex and ethnicity, using the codes supplied by the
Personnel Department to the EEOC follows:
24 white males
1 white female
3 black African/American males
3 Hispanic males[7]
(ROR, Volume 1, Item 4, pp. 33-54.)
The human rights referee then concluded that Donahue did not state a prima facie case on his claim that in the city's failing to extend the eligibility list for a second time, he was discriminated against as to race (white) and sex.[8] He therefore dismissed Donahue's complaint as failing to state a prima fade case.[9] The rationale of the referee was as follows. Since there was no direct proof of discriminatory animus, the "disparate treatment" model of McDonnell-Douglas v. Green, 411 U.S. 792,802-804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) would govern. See also AnnHoward's Apricot's Restaurants v. CHRO, 237 Conn. 209, 225-226 (1996). Donahue would have the burden of establishing a prima facie case by showing that: (1.) He belongs to a protected class; (2.) he was qualified CT Page 13468-fg for, and also applied for, a job for which his employer was seeking candidates; (3.) his employer denied him the position despite his qualifications; and, (4.) after denying him the position, his employer continued to solicit applicants for the position who had comparable qualifications to his own. (ROR, Volume 1, Item 4, p. 60.)
The human rights referee found that Donahue met the first two requirements of the test, but could not meet the third and fourth requirements. The fire chief made the ultimate decision on who was to be promoted, after he received the names from the eligibility list. He also decided whether the list should be extended, and the Personnel Board rightly could not act without the chiefs approval. There were no vacancies after the list expired and after vacancies occurred, there was no duty to file these immediately. Therefore, Donahue could not prove that he was rejected from a position and that there was a subsequent solicitation for promotional candidates. Finally, it was most persuasive to the referee that the fire chief had made thirty-one promotions from the 1994 list, 24 of which were white. (ROR, Volume 1, Item 4. pp. 61-74.)
Turning to the complainant John Cooper, the human rights referee stated: "Mr. John Cooper claims that he suffered the same injury as the white firefighters on the 1994 register/`certification list'. The claims of Mr. John Cooper would seem to be polar opposites to his white colleagues because he is claiming that Fire Chief Robert Dobson did not promote him because he is a black, African-American." (ROR, Volume 1, Item 4, p. 79.) The referee rejected any claim that Cooper might have based on suffering the same injury as the white firefighters on the 1994 register/"certification list". He also rejected any claim of Cooper based upon racial discrimination toward Cooper himself, based upon the same analysis as he had stated for Donahue. He concluded that Cooper had also failed to set forth a prima facie case. This appeal by the CHRO followed.[10]
In reviewing the claims raised on this appeal, the court must employ the substantial evidence test: "Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . ." (Citations omitted; internal quotation marks omitted.) Adriani v. Commission on Human Rights Opportunities,220 Conn. 307, 314-15 (1991). "Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of CT Page 13468-fh its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . ." (Citations omitted; internal quotation marks omitted.) MacDermid, Inc. v. Dept. of EnvironmentalProtection, 257 Conn. 128, 137 (2001).
The basic question raised in this appeal is clearly whether the human rights referee was correct that Donahue failed to establish a McDonnellDouglas prima facie case. The court disagrees with the referee that the lack of openings for fire lieutenant in the period immediately after the 1994 list expired dooms Donahue's prima facie case. The court relies on the leading case of Lowe v. City of Monrovia, 775 F.2d 998 (9th Cir. 1985).
In Lowe, a black woman, Kathryn Lowe, passed a civil service test and was placed on an eligibility list that remained in effect for six months. Prior to the effective date of Lowe's list, the defendant city hired another officer for an entry-level position through a lateral hiring process. In response to Lowe's Title VII complaint, the defendant argued that "Lowe did not `apply' for the purposes of the McDonnellDouglas test, until the eligibility list which contained her name became effective. The City also contends that the automatic expiration of the eligibility list on February 1, 1983 did not constitute a rejection. "Lowe v. City of Monrovia, supra, 775 F.2d 1005.
The court, however, found that Lowe had applied by filing her application. Further, she had been rejected: "[The city] explains that eligibility lists automatically expire after six months. As with its practice of delaying the effective dates of its eligibility lists, the City may have a legitimate reason for maintaining the lists for only six months. However, any such justification, like any justification the City asserts for delaying the effective dates of the lists, may be considered only when we evaluate the articulated nondiscriminatory reason for not hiring the plaintiff." Lowe v. City of Monrovia, supra, 775 F.2d 1006. The court continued: "Our dissenting colleague concludes that no discriminatory act could have occurred in this case because the original opening was filled before the plaintiff became eligible for employment under the applicable civil service rules and no other openings were created until after her eligibility expired. The point is, however, that the rules at issue permit the manipulation of hiring dates and job openings. They are not as mechanical as the dissent suggests. . . . [I]t can allow a list with high-ranking minority members to expire before announcing the existence of the next set of openings." Id., 1009-10 n. 9. CT Page 13468-fi
Lowe has been summarized in E.E.O.C. v. Metal Service Co., 892 F.2d 341,349 n. 9 (3rd Cir. 1990) as follows: "It was undisputed that the city, which had an all-white, all-male police force, hired white male police officers after plaintiff, a black female, had filed her initial application, after she had taken the city's examination but before the eligibility list had become effective, and after the eligibility list had expired. . . . But because there were admittedly no openings during the time the eligibility list containing the plaintiff's name was officially effective, the city argued that the plaintiff had not applied for a vacant job and thus had not established her prima facie case. The city contended that it could not discriminate against someone it had not even considered for the job. . . . The district court agreed and granted the city's motion for summary judgment. The Ninth Circuit reversed. In rejecting the city's argument, the appellate court held that the plaintiff had satisfied her prima facie case because she had applied, for purposes of Title VII, when she filed her initial application and such application extended beyond the city's self-imposed six month effectiveness date. . . ." (Citations omitted.)
Lowe extends to Donahue's case by analogy. The evidence presented by Donahue of the failure to extend the list so that he did not have an opportunity for consideration for promotion is analogous to the six-month expiration of the list in Lowe. The evidence of extending the list once and refusing to extend the list the second time could lead the human rights referee to conclude that Donahue was rejected and the position remained open. In other words, there is a basis here to find a prima facie case.
In addition, as the CHRO points out, the fourth point of the McDonnellDouglas test has been modified. The latest cases show the point to be more generally whether the plaintiff "present[ed] proof that [the] discharge occurred in circumstances giving rise to an inference of discrimination on the basis of [his] membership in that class. . . ." (Citations omitted.) Chertkova v. Connecticut General Life Ins. Co.,92 F.3d 81, 91 (2d Cir. 1996); Stratton v. Department for the Aging,132 F.3d 869, 879 (2d Cir. 1997). This element may be satisfied by showing "preferential treatment given to employees outside the protected class. . . ." (Citations omitted.) Chertkova v. Connecticut General LifeIns. Co., supra, 91.
In this regard, the case of Shannon v. Ford Motor Company, 72 F.3d 678,682 n. 5 (8th Cir. 1996) describes Lowe as follows: "In that case, the plaintiff had evidence that the employer only hired from `the list' when CT Page 13468-fj whites were next in line, not when blacks were at the top." Donahue similarly presented evidence that the list was extended when minorities were at the top, but was not extended when whites were next in line. (ROR, Volume 10, Item 102, p. 1903.)
The city urges the court to go beyond the prima facie case and to consider its nondiscriminatory reason. The court declines to do this. Not only has the human rights referee dismissed this case on the ground that the Donahue did not meet the burden of proving a prima facie case, there is a mutual mistake of fact and a piece of evidence not discussed by the referee.
In findings of fact 28 and 129, and also in his analysis, the referee states that Dobson's actions in promoting twenty-four white firefighters from the 1994 list confirms the lack of a prima facie case. As it turns out, this finding is incorrect. The promotions of whites were madebefore Dobson became the fire chief (ROR. Volume 6, Item 98, p. 1044.)
In addition, the referee did not discuss the memorandum of personnel analyst Sullivan to Personnel Director Washington dated May 14, 1996. (ROR, Volume 11, Item 120, p. 2054.) This memorandum was generated after a meeting had taken place that day where the topic of the minority representation in the fire department had been discussed and Sullivan was asked to obtain figures on the ethnic composition of the list. Sullivan made the suggestion that the chief only ask for a six month extension and wait for a new list for further recruitment. In her later testimony, Sullivan could not recall the nature of the discussions with the fire chief either before or after the memorandum was written. There is no question, however, that Sullivan had met with the fire chief just days before the memorandum was written. (ROR, Volume 7, Item 99, p. 1326.) The human rights referee should have the opportunity to further evaluate this evidence as a circumstance giving rise to an inference of discrimination.
Since "[t]he trier of fact may consider the same evidence that the plaintiff has introduced to establish a prima facie case in determining whether the defendant's explanation for the employment decision is pretextual. . . ." (Citations omitted.) Lowe v. City of Monrovia, supra, 775 F.2d 1008, it is important that there be a new consideration of the record here to determine again the issue of a prima facie case. If the referee concludes that the CHRO has established a prima facie case on this record, then the matter should proceed to the other elements of theMcDonnell Douglas and Ann Howard's test. See West Hartford v. Commissionon Human Rights Opportunties, 176 Conn. 291, 299 (1978). CT Page 13468-fk
The nature of Cooper's case has been clarified. At oral argument, the CHRO explained that Cooper was interested in Donahue's claim because if Donahue was successful in showing that the refusal to extend the list was discriminatory, he would also benefit as a listed name.[11] At any subsequent proceedings in the CHRO, Cooper has the standing to participate to protect his status on the list and for remedy purposes.Allen v. American Home Foods, Inc., 644 F. Sup. 1553, 1557 (N.D. Ind. 1986); Anjelino v. New York Times Co., 200 F.3d 73, 89 (3d Cir. 1999) (men sandwiched among the women on the priority list had standing in women's sex discrimination suit); Brennan v. N.Y.C. Board of Education,260 F.3d 123 (2d Cir. 2001) (white male employees whose employment status on an eligibility list would be negatively affected by the terms of settlement agreement have standing under the federal rules).
Therefore, the case is remanded to the CHRO. The CHRO is ordered to vacate the decision dismissing the complaints of Donahue and Cooper and render a new decision based on the record, and consistent with this decision.
Henry S. Cohn, Judge