**UNITED STATES, to Use and for Benefit of FOSTER WHEELER CORPORATION, v. AMERICAN SURETY CO. OF NEW YORK.**

**ATLANTIC BASIN IRON WORKS v. UNITED STATES.**

No. 254.

Circuit Court of Appeals, Second Circuit.

May 15, 1944.

Kamen & Ostertag, of New York City (Bernard I. Kamen and Sol S. Ostertag, both of New York City, of counsel), for Foster Wheeler Corporation.

Bigham, Englar, Jones & Houston, of New York City (Arthur W. Clement and Henry J. Bogatko, both of New York City, of counsel), for American Surety Co. of New York, and Atlantic Basin Iron Works.

Harold M. Kennedy, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith and Mario Pittoni, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for the United States.

Before CHASE, CLARK, and FRANK. Circuit Judges.

### CHASE, Circuit Judge.

This appeal is by the use plaintiff, who will be called the plaintiff, from a judgment in a suit it brought under the provisions of the Miller Act, 40 U.S.C.A. § 270b, in the District Court for the Eastern District of New York against the American Surety Company of New York. That defendant is the surety on a performance bond given to the United States by the Atlantic Basin Iron Works, hereinafter to be called Atlantic, when the latter entered into a contract with the government on November 27, 1936, to make designated repairs on the army transport ship Republic. Those repairs consisted in part of the installation of four new boilers with their equipment, which were supplied for that purpose by the plaintiff under a subcontract with Atlantic, to be installed by the latter under the supervision of an engineer furnished by the plaintiff.

The boilers so supplied by the plaintiff and installed under the supervision of its engineer were tested and accepted by the government. All the purchase price due on the plaintiff's subcontract was paid to it except a claimed balance of $5,615.29 which this suit was brought to recover. The amount of this balance was stipulated at a slightly smaller amount and is not disputed. The controversy relates to the cause of, and. responsibility for, the failure of the brick walls in the boiler fire boxes which occurred within a year after the acceptance of the material furnished by the plaintiff and installed under its supervision. After the plaintiff had been requested to repair the brick walls and had refused to do so, Atlantic repaired them and charged the cost to the plaintiff. The walls needed additional repairs within the year and the government made them itself upon the refusal of Atlantic and the plaintiff to do so, charging the cost to Atlantic which in turn charged it to the plaintiff.

This was the state of affairs when the plaintiff sued Atlantic's surety on the bond on April 27, 1938, to recover the balance it claimed due on the subcontract. The surety answered denying liability and duly notified Atlantic of the suit. The latter then moved to intervene as a party defendant. Its motion was granted on June 14, 1938, over the objection of the plaintiff, whose exception to that ruling raises one of the issues on this appeal. Atlantic also answered the complaint by denying liability and pleading a special defense which by amendment became a counterclaim for the cost of the repairs to the walls in the fire boxes made as above stated. The plaintiff denied all the material allegations of the counterclaim and interposed a special defense to it based on the ground that the court was without jurisdiction since there was no diversity of citizenship, as admittedly there was not. This special defense was overruled and the plaintiff duly excepted.

Thereafter Atlantic was allowed to cite in the United States as a third party defendant over the latter's objection and that of the plaintiff. A complaint was duly served by Atlantic upon the third party defendant, which answered and filed a counterclaim against Atlantic and the original defendant. The government subsequently waived its objection to being interpleaded and has taken no appeal from the final judgment.

After a hearing by the court and the filing of findings of fact and conclusions of law, a judgment was entered which (1) dismissed the complaint of Atlantic against the government on the merits, (2) allowed the government to recover $5,800.00 and its costs against the original defendant and Atlantic, (3) dismissed the plaintiff's com-

plaint on the merits, with costs to the original defendant, and (4) allowed Atlantic to recover of the plaintiff, together .with its costs, the total of its expenditures for repairs plus the amount of the judgment recovered by the government against it and the original plaintiff, less the agreed balance remaining unpaid. to the plaintiff and due upon the performance of its subcontract to furnish and supervise the installation of the boilers.

■■■ Atlantic was properly allowed to intervene in the suit. It would have been bound by a judgment against its surety entered after it had received due notice of the suit, and it was entitled to an opportunity to defend that action. Washington Gaslight Co. v. District of Columbia, 161 U. S. 316, 329, 330, 16 S.Ct. 564, 40 L.Ed. 712; Kramer v. Morgan, 2 Cir., 85 F.2d 96. The counterclaim it filed against the plaintiff was likewise properly allowed although there was no diversity of citizenship to support jurisdiction. It was based on an alleged breach of the same contract on which the plaintiff sued. Although the intervenor could not have sued the plaintiff in the first instance on that contract in a federal court, yet when the plaintiff sued upon it under the Miller Act and the intervenor became a party to that suit no additional ground of jurisdiction was needed to support the counterclaim. Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S. Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370. Of course the propriety of such orders as these would hardly have been questioned had they been made after the Federal Rules of Civil Procedure took effect. Rules 13 (a) and 24(a), F. R. C. P., 28 U.S.C.A. following section 723c.

■■■ The judgment on the merits is supported by the findings, which in turn are supported by substantial, though in some respects contradicted, evidence. The failure of the brick walls in the fire boxes and the consequent need for the repairs that were made is clear enough, and so is the fair and reasonable cost of such repairs. Moreover, it was proved and found that the necessity of those repairs was due not to any incompetent operation of the crew of the Republic, as the plaintiff attempted to show, but "in part to defective brick and in part to the failure to supply a sufficient design and number of tie bolts * * *."

The trial court also found on adequate evidence that some of the fire brick supplied by the plaintiff and used in the fire boxes did not comply with the specifications requiring that:

"All fire brick and fire title shall conform to .class S. H. 75 of Federal Specifications Board, specifications for fire clay brick No. HH-B-671 a, and in addition thereto shall pass the Navy simulated service test with a work factor rating of not less than 1.7." The plaintiff's breach of its contract in failing to supply materials as agreed and their installation under its supervision with tie bolts insufficient in design and number were therefore proved to be what made the repairs necessary.

The plaintiff makes over-much of the contention that these findings are erroneous because the judge was wrong, so it is said, in holding as he did that the burden of proof was on the plaintiff to show performance of the contract on its part in order to recover. It is said that a stipulation signed by all the parties fixed the amount of the balance due the plaintiff under the terms of the contract and relieved it of the burden of proof imposed by the judge. The plaintiff is but partly right. There was a stipulation in which all parties agreed upon "the amounts claimed by the respective parties in this action," and "in the event the Foster Wheeler Corporation is awarded judgment in this action against the Atlantic Basin Iron Works and American Surety Company of New York" the sum it was entitled to recover was stated and was the same amount for which it was given credit in computing the amount of the judgment entered against it. This stipulation did not, however, affect the burden of proof as to plaintiff's performance of its contract. It alleged due performance in its complaint, as it had to do in order to state a cause of action, and the pleadings put it to its proof in that regard. The stipulation in respect to the balance of the contract price and the cost of repairs merely facilitated the computation of damages, whoever eventually recovered judgment. The same is true as to the burden of proof on the question of the plaintiff's liability on the counterclaims of Atlantic and the government. Those claimants had the burden of proof on that score and they discharged it, as the trial judge found and the record shows.

The stipulation above referred to also bound the parties as follows:

"4. The only matters to be determined by the Court relate to the effect, if any, of

the guarantee clause in the contract; the amount of damages of the respective parties, if any, and to the compliance or noncompliance by Foster Wheeler Corporation with certain items, as hereinafter set forth, of the following boiler specifications: * * *." Certain specifications were then set forth, together with a statement of the respects in which it was claimed the plaintiff had failed to comply with them.

The contract referred to in the stipulation was the one of November 27, 1936, between the United States and Atlantic. And it was further stipulated that:

"3. Pursuant to said contract there were furnished and supplied by Foster Wheeler Corporation four sectional cross drum type boilers with Todd Model C burners, with air heaters, double air casings and blowers, which were installed in the U. S. A. T. 'Republic' under the supervision of the Foster Wheeler Corporation."

The reason why the parties stipulated that the boilers and their equipment were installed "pursuant" to the contract between Atlantic and the government is found in the Proposal and Specification No. 38599 which was submitted to Atlantic by the plaintiff on November 16, 1936, and on which the subcontract was drawn. The plaintiff then knew that the materials, to be installed under its supervision, which it proposed to supply to Atlantic were for the purpose of enabling Atlantic to perform its contract with the government, and to make it plain that the plaintiff would perform pro tanto in accordance with the terms of that contract its above mentioned proposal and specifications stated that:

"It is definitely understood and agreed that in any point wherein the foregoing specifications as submitted by Foster Wheeler Corporation differ from the plans and specifications section D E F. 2 only as issued by the Superintendent, Army Transport Service, N. Y. P. of Embarkation for furnishing new boilers, U. S. A. T. 'Republic', I. N. V. AT 626-37-30, October 23rd, 1936, that the latter specifications will govern."

There was included in what the plaintiff designated as the "latter specifications" in the above quoted excerpt from its proposal and specifications the following provision for a guarantee:

"The contractor shall guarantee (in writing) the equipment furnished, against defective materials and workmanship in any part for a period of one (1) year from the date of acceptance and any part proving defective within that time shall be promptly replaced by supply of new part or otherwise remedied by the contractor without cost to the U. S. Government. The contractor shall further guarantee that all information stated by him or his agents on the data sheet to be submitted and the certificate of tests furnished, is correct and reliable, and any failure of the equipment or apparatus furnished and accepted to conform strictly to such statements, after installation and prescribed trial under working conditions, shall be promptly corrected at the expense of the contractor, to the full and complete satisfaction of the Officer in Charge."

This guarantee, being a part of the specifications which the plaintiff agreed to have treated as its own in so far as the latter differed in any point, was thus adopted by the plaintiff. The guarantee in the subcontract, which is expressed in somewhat different language, must therefore be construed accordingly. Nor can there be any doubt that the plaintiff so understood its obligation. On October 25, 1937, when the repairs to the brick work in the fire boxes had been made the subject of some correspondence, the plaintiff's president wrote a letter to Atlantic in which he insisted that the trouble had been caused by the Republic's crew "through poor operation of the oil burners." He did not otherwise question the plaintiff's responsibility under the contract for the failure within a year of the brick work installed under its supervision, but he said, "Like all engineering firms we guarantee our workmanship and material for a period of one year. Neither we nor any other engineering concern will guarantee customer's operation."

Judgment affirmed.