**UNION SWITCH & SIGNAL, INC., Plaintiff,**

v.

**ST. PAUL FIRE AND MARINE INSURANCE COMPANY and Federal Insurance Company, Defendants.**

No. 04 Civ. 7596(VM).

United States District Court, S.D. New York.

March 29, 2005.

**486**

Jose Antonio Aquino, Ross & Cohen, LLP, New York City, for plaintiff.

## DECISION AND ORDER

MARRERO, District Judge.

Yonkers Contracting Company, Inc., Tully Construction Co. Inc. and A.J. Pegno Construction Corp., d/b/a Yonkers/Tully/Pegno—a Joint Venture (collectively, "the Joint Venture") have moved to intervene in this action as a defendant pursuant to Fed.R.Civ.P. 24, and to file a third-party complaint against a new proposed third-party defendant, Daidone, Inc. ("Daidone") pursuant to Fed. R.Civ.P. 14. Plaintiff Union Switch & Signal, Inc. ("US & S"), which filed this lawsuit against sureties St. Paul Fire And Marine Insurance Company ("St. Paul") and Federal Insurance Company ("FIC") (collectively, "the Sureties") for a payment of $1,403,297.04 plus interest allegedly owed to it under a performance bond, has opposed the motion.

For reasons discussed below, the Court denies the Joint Venture's motion to intervene.

## I. BACKGROUND

The underlying suit is one of many that are related in some way to the terrorist attacks of September 11, 2001. Those attacks destroyed rail facilities under the World Trade Center that were owned and operated by the Port Authority Trans–Hudson Corporation ("PATH"). In order to restore train service as expeditiously as possible, PATH hired the Joint Venture to serve as general contractor on the first phase of the restoration project. In connection with that contract, which PATH called the "Down-town PATH Restoration Program—Phase I Contract" (hereinafter, "the Contract"), the Joint Venture purchased a $60 million Performance and Payment Bond ("the Bond") from the Sureties. US & S's Complaint alleges that the Bond was furnished to provide "payment of all lawful claims of subcontractors, materialmen, laborers, persons, firms, or other supplies having a direct contract with The Joint Venture or with a subcontractor of The Joint Venture for labor, material, or both." (Compl. ¶ 7.)

US & S claims that it is entitled to a payment of approximately $1.4 million, plus interest, from the Sureties under the terms of the Bond. According to U.S. & S, the Joint Venture hired Daidone as a subcontractor and Daidone, in turn, subcontracted with U.S. & S to provide materials and equipment for the project. Even though the subcontract, as amended, entitled U.S. & S to be paid roughly $9.9 million by Daidone for work performed, Daidone failed to pay approximately $1.4 million of that amount. (See id. ¶¶ 13–17.) US & S further argues that it has complied with all of the conditions required for it to be able to claim against the Bond for Daidone's $1.4 million nonpayment, and yet the Sureties have failed to pay its claim. (See id. ¶¶ 17–21.) This nonpayment led U.S. & S to file the instant suit on September 24, 2004. On November 11, 2004, the Sureties, represented by the law firm of Peckar & Abramson, P.C., filed their Answer.

On December 2, 2004, Peckar & Abramson, this time on behalf of the Joint Venture, filed a motion for leave to intervene in the instant suit as of right or permissively, pursuant to Fed.R.Civ.P. 24, and to interpose a third-party complaint against Daidone pursuant to Fed.R.Civ.P. 14. According to materials submitted in support of the Joint Venture's motion, the Joint Venture will be required to indemnify the Sureties for any money recovered by U.S. & S as a result of the instant suit, but will itself have indemnification rights against Daidone. The Joint Venture argues that its intervention is necessary to ensure that all parties relevant to the outcome of the suit are parties to this action, since the Sureties themselves do not

appear to have standing to assert third-party claims against Daidone. (*See* Affidavit of James Strobel in Support of Motion for Leave to Intervene, dated Dec. 2, 2004 (hereinafter, "Strobel Aff.") ¶¶ 6–7.)

US & S, in opposing the motion, argues that the Joint Venture does not meet the requirements for intervention as of right pursuant to Rule 24(a), and that permissive intervention should not be granted due to the risk that intervention will unduly delay or prejudice the adjudication of its rights in the instant suit. In support of its motion, U.S. & S has informed the Court of the existence of an earlier-filed suit in New York state court by the Joint Venture against Daidone. That suit, which appears to have been filed on or about February 20, 2004 in the Supreme Court of the State of New York, Westchester County, and given docket number 04–00564 (hereinafter, "the State Action") (*see* Complaint, *Yonkers/Tully/Pegno -A Joint Venture v. Daidone Electric, Inc.,* Index No. 04–00564 (N.Y. Sup.Ct. filed Feb. 20, 2004), attached as Ex. 2 to the Affidavit of Michael S. Hogan, Esq. in Opposition to Motion for Leave to Intervene, dated Dec. 29, 2004 (hereinafter, "Hogan Aff.")), alleges that Daidone violated a number of its obligations under the subcontract it signed with the Joint Venture to perform work on the PATH reconstruction effort. In a 35–page response apparently filed on September 21, 2004, Daidone denies the Joint Venture's allegations, asserts a number of affirmative defenses, and alleges eight separate causes of action via a counterclaim against the Joint Venture, Peter K. Tully ("Tully"), and John E. Pegno ("Pegno"), principals of two of the Joint Venture's constituent firms, including a cause of action arising under the federal Racketeering Influenced and Corrupt Organizations ("RICO") Act. (*See* Amended Answer and Counterclaim, *Yonkers/Tully/Pegno -A Joint Venture v. Daidone Electric, Inc.,* Index No. 04–00564 (N.Y. Sup.Ct. filed Feb. 20, 2004), attached as Ex. 3 to Hogan Aff.)[1] In support of these causes of action, Daidone's counterclaim accuses the Joint Venture of a series of improper actions, including threats, coercion, diversion of federal funds, and other illegal maneuvers that allegedly caused it over $17 million in damages.

The Joint Venture's reply submission alleges that the existence of the State Action actually supports its arguments for intervention, since a failure to allow intervention would effectively bind the Joint Venture to the results of the instant action but would allow Daidone to avoid paying indemnification if it prevails in the separate State Action. (*See* Proposed Intervenor's Reply Memorandum to U.S. & S's Opposition to Motion for Leave to Intervene, dated Jan. 7, 2005 (hereinafter, "Joint Venture Reply Mem.") at 5–6.) The reply brief also asserts that New York law categorically entitles it, as a principal, to intervene any time that its surety is sued by a creditor, on the grounds that sureties are allegedly unable to assert the principal's personal defenses or claims. (*See id.* at 2–4.) Finally, the Joint Venture claims in the alternative that permissive intervention should be granted because of the timeliness of its motion and the close relationship between the factual and legal issues relevant to the instant action and the Joint Venture's defenses and claims against Daidone.

## II. DISCUSSION

### A. INTERVENTION AS OF RIGHT

■ The Joint Venture moves to intervene as of right pursuant to Fed.R.Civ.P. 24(a)(2). "To intervene as of right, a movant must: (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Brennan v. N.Y.C. Board of Education,* 260 F.3d 123, 128–29 (2d Cir.2001) (internal quotation marks omitted). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." *Catanzano by Catanzano v. Wing,* 103 F.3d 223, 232 (2d Cir.1996) (quoting *Farmland*

---

1. Other causes of action asserted in the counterclaim include claims for fraudulent misrepresentation, duress, breach of contract, breach of implied covenant of good faith, quantum meruit, unjust enrichment, and intentional interference with contract. (*See id.*)

*Dairies v. Comm'r*, 847 F.2d 1038, 1043 (2d Cir.1988)) (internal quotation marks omitted).

The Joint Venture satisfies the first two elements of the Rule 24(a)(2) test. It moved to intervene within a few months of U.S. & S's filing of the instant suit, and no substantive proceedings have yet taken place in the action. In addition, *no prejudice to parties would be caused by the timing of the Joint Venture's motion. See In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 198 (2d Cir.2000) ("A district court has broad discretion in assessing the timeliness of a motion to intervene, which 'defies precise definition.'") (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir.1994)). The Joint Venture's interest in the suit is self-evident: US & S is seeking to collect against a bond that the Joint Venture purchased in connection with a project on which the Joint Venture is general contractor. US & S does not contest that the Joint Venture satisfies these elements of the test.

■ US & S does argue, however, that the Joint Venture's rights will not be impaired by the disposition of this action. The Court cannot agree with U.S. & S on this point, although the impairment of interests that may result from the suit would be far more limited than the Joint Venture alleges. While none of the materials submitted with the Joint Venture's motion indicate that the Joint Venture will automatically be required to indemnify the Sureties should U.S. & S prevail in this action, the Court accepts the validity of this assertion. In the absence of contractual language to the contrary, principals are ordinarily obligated to indemnify their sureties for any of their obligations that are paid by the surety. *See United States, to Use and Benefit of Foster Wheeler Corp. v. American Surety Co.*, 142 F.2d 726, 728 (2d Cir.1944); *Restatement (Third) of Suretyship & Guarantee* ¶¶ 21–22 (1996) (hereinafter, *"Restatement"*) (indicating that a principal is ordinarily bound to perform an underlying obligation, or to reimburse the surety for its performance, if it has notice of

the obligation). The Court concludes that the direct effect of an adverse judgment in this case on the Joint Venture is the type of practical impairment of interests that the third prong of the Rule 24(a)(2) analysis contemplates.[2]

The hypothetical effect of an adverse judgement on any rights that the Joint Venture may have against Daidone, however, is not the type of practical impairment contemplated by Rule 24(a)(2). According to the Joint Venture, it will be required to indemnify the Sureties should U.S. & S prevail in this action. If it is not permitted to intervene in the action, and to further bring Daidone in as a third-party defendant, the Joint Venture alleges, it will risk having to indemnify the Sureties without being certain that it will, in turn, be able to be indemnified by Daidone via the currently-pending State Action. The Joint Venture views this risk as one that would practically impair its interests if it is not allowed to intervene. (*See* Joint Venture Reply Mem. at 5–6.)

But this argument misapprehends the consequences of a ruling on this motion for the Joint Venture's rights as against Daidone. If the Joint Venture's motion is denied and U.S. & S prevails in this action, the result will in no way preclude the Joint Venture from seeking whatever indemnification it is contractually entitled to in the State Action or in a subsequent indemnification action. Two separate reasons support this conclusion. First, if this litigation simply concerns U.S. & S's rights to claim against the Bond, the Court will have no occasion to examine the conceptually distinct issues of the Joint Venture's rights against Daidone, which are currently being litigated in the State Action. Second, even if this Court must consider certain issues arising out of the relationship between the Joint Venture and Daidone in the course of resolving U.S. & S's claim, that adjudication will not be res judicata as to them, as neither will have been a party to this action. The Joint Venture will thus be

---

2. Because the Joint Venture would likely be compelled to reimburse the Sureties or even U.S. & S directly if U.S. & S prevails, it stands in a different position than the proposed intervenor in *Washington Elec. Co-op., Inc. v. Massachusetts*

*Mun. Wholesale Elec. Co.*, whose interest in the litigation was "based upon a double contingency," and thus held to be too remote to qualify for recognition under Rule 24(a)(2). 922 F.2d 92, 97 (2d Cir.1990).

unimpaired by the results of this action from arguing for whatever indemnification it believes it is entitled to receive from Daidone, should U.S. & S prevail, either in the State Action or a subsequent action for indemnification.[3] *See Washington Electric,* 922 F.2d 92, 98 (denying intervention where the proposed intervenor would not be precluded from pursuing interests of third parties in subsequent litigation); *Ionian Shipping Co. v. British Law Ins. Co.,* 426 F.2d 186, 190 (2d Cir.1970) ("If [the proposed intervenor] is not a party to the suit, then the question of its superior rights cannot arise, for they are irrelevant to [the plaintiff]'s claim. And if [the proposed intervenor] is not a party, and the issue does not arise, and thus is not appropriately litigated, it is hornbook law that [its] right to assert it in a subsequent suit will not be barred by either collateral estoppel or res judicata."). Requiring the Joint Venture to seek such indemnification in the State Action it initiated six months before this suit was filed, or in another action, should it choose to do so, does not constitute impairment of interests within the definition of Rule 24(a)(2). *See In re Holocaust Victim Assets Litigation,* 225 F.3d at 199 (concluding that "potential obstacles to the pursuit of an independent lawsuit do not 'impair or impede the applicant's ability to protect [its] interest,' Fed.R.Civ.P. 24(a)(2), to an extent warranting intervention as of right").

Moreover, despite its assertions to the contrary, the Joint Venture would risk being forced to reimburse U.S. & S without obtaining indemnification from Daidone even if it is allowed to intervene in these proceedings. If the Joint Venture's motion were granted and all issues were decided by this Court before judgment is reached in the State Action, the Joint Venture would still have to indemnify the Sureties without being able to recover from Daidone if U.S. & S prevails on its claim and the Joint Venture's third-party claim is unsuccessful, or if the claim is set off by damages claims that Daidone would have the right to make against the Joint Venture as a third-party defendant in the action. *See* Fed.R.Civ.P. 14(a) (granting third-party defendants the right to assert counterclaims against third-party plaintiffs).

■ In considering the fourth factor, the adequacy of the Sureties' representation of the Joint Venture's interests, the Court concludes that the Joint Venture's motion should be denied for failure to demonstrate that its current representation by the Sureties would be inadequate. Although the burden has been characterized as minimal, "[a]n applicant for intervention as of right has the burden of showing that representation may be inadequate." *United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2nd Cir.1978).

The Court's conclusion that the Joint Venture has not met that burden here is grounded on several considerations. The Joint Venture and the current defendants, the Sureties, have the same interests with respect to U.S. & S's claim: to avoid having to pay U.S. & S from the Bond for money allegedly owing to it. *See Washington Electric,* 922 F.2d at 98 ("Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured."). The pleadings submitted by the parties make clear that their interests with respect to U.S. & S, the plaintiff in this action, are identical. Both the Sureties' Answer and the Joint Venture's proposed Answer and Third–Party Complaint assert the same affirmative defenses to U.S. & S's claims, and further contain identically-worded denials in response to U.S. & S's substantive allegations. (*Compare* Answer of the Sureties, dated Oct. 16, 2004 *with* Answer and Third–Party Complaint of Proposed Intervenor the Joint Venture, dated Dec. 2, 2004, attached as Ex. B to Strobel Aff.) In-

---

**3.** Furthermore, while the Court cannot at present assess the preclusive scope of a hypothetical judgment in this action, if U.S. & S does not prevail against the Sureties, conceivably the Joint Venture may be able to benefit from a ruling against U.S. & S under the doctrine of issue preclusion even if it is not made a party. *See Restatement (Second) of Judgments* § 29 (2004)

("A party precluded from relitigating an issue with an opposing party ... is also precluded from doing so with another person unless the fact that he lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue.").

deed, both are represented in the instant proceeding by the same counsel.

Neither the Sureties nor the Joint Venture propose any counterclaims against U.S. & S at all, much less any independent counterclaims or defenses arising out of matters unrelated to their obligations with respect to the Bond. There is thus no basis for concluding that, under New York law, the Sureties would be unable to adequately represent the Joint Venture's interests in the current litigation by asserting any defense to liability contemplated by the Joint Venture. *See H.H. & F.E. Bean, Inc. v. Travelers Indem. Co.*, 67 A.D.2d 1102, 415 N.Y.S.2d 144, 145 (App. Div. 4th Dep't 1979) ("When a guarantor is sued alone, it may not urge as a defense an independent cause of action in favor of its principal against the plaintiff. However, this does not preclude a defense with respect to the transactions in suit between the plaintiff and the defendant's principal as to the amount due thereon."); *Restatement* § 34 (entitling a surety to assert any defense to its obligation available to the principal, except for the principal's defenses of discharge through bankruptcy or lack of capacity); 11 *N.Y. Jur.2d Bonds* § 115 (2004) ("Defenses of the principal are available to a surety").

This case can thus be distinguished from *Coleman Capital Corp. v. Fidelity Deposit Co. of Md.*, 43 F.R.D. 407 (S.D.N.Y.1967), in which the court allowed a general contractor to intervene in a suit by a subcontractor's assignee against a surety where the general contractor sought to assert independent counterclaims against the assignee and other parties. The *Coleman Capital* court did state in dicta that "[a] general contractor may intervene as of right in a suit by a subcontractor against a surety on a performance bond," *id.* at 408, concluding that the surety's representation was inadequate "because it cannot interpose petitioner's 'personal' defenses or claims." *Id.* (citing, *inter alia, Ettlinger v. National Surety Co.*, 221 N.Y. 467, 117 N.E. 945 (1917)). But the Joint Venture has not proposed to assert any

defenses or claims with respect to U.S. & S, the plaintiff in this action, that are "personal" to it in the sense contemplated by *Coleman Capital* and related caselaw.

Both *Ettlinger* and more recent cases make clear that the "personal" defenses and claims that sureties are unable to assert on behalf of their principals are those that are unrelated to the validity of the underlying obligation on which the creditor's suit was based, and that furthermore, a creditor plaintiff may not be compelled to join a principal in a suit against a surety so that the principal may assert those independent claims and defenses against the plaintiff directly. In *Ettlinger*, for example, the New York Court of Appeals explained:

> A distinction is sometimes made between cases where the surety is sued alone and those where he is sued together with his principal. But it is difficult to see how the fact that the principal is joined with the surety is material. If so, the rights of the parties depend upon the form of the action and the will of the plaintiff. For the latter cannot be compelled to bring in the principal as a defendant in an action brought by him to obtain a money judgment.

221 N.Y. at 471, 117 N.E. 945; *see also Holland v. Fahnestock & Co., Inc.*, 210 F.R.D. 487, 500 (S.D.N.Y.2002) ("If the action is to obtain a money judgment against the surety alone, the creditor cannot be compelled to bring in the principal as a defendant, unless the suretyship contract expressly provides as a condition precedent to liability on the part of the surety that the principal must be made a party to any action on the undertaking.") (quoting 63 *N.Y. Jur.2d Guaranty & Suretyship* § 335).[4]

New York cases have made clear that suits such as the instant one, in which a surety but not the principal is sued by an alleged creditor, are common and permissible under New York law. *See id.* ("it is not unusual for the beneficiary of a guarantee to sue a guarantor or surety alone, apart from any action against the principal debtor . . ., and there is no requirement that the beneficiary join both

---

**4.** The Joint Venture has pointed to nothing in the suretyship contract that requires it to be made a party to any action on the Bond.

parties") (quoting *Huber Lathing Corp. v. Aetna Cas. & Sur. Co.*, 132 A.D.2d 597, 517 N.Y.S.2d 758, 760 (2d Dep't 1987)).[5]

A further distinction that may be drawn between this case and *Coleman Capital* concerns the nature of the claims that the Joint Venture asserts the right to interpose in this action. The Joint Venture, in moving to intervene, may have a legitimate objective of obtaining indemnification from Daidone, should U.S. & S prevail in this action and the Joint Venture be compelled to indemnify the Sureties. As stated above, the Court accepts the Joint Venture's representations that the Sureties would not be able to seek such indemnification directly from Daidone. But the Joint Venture's potential indemnification right against Daidone, a non-party to this action, is conceptually quite different from the personal defenses or claims that the principal in *Coleman Capital* sought to assert against the *plaintiff creditor* in that action, especially where the Joint Venture's interests with respect to Daidone will be adequately protected by the state litigation it initiated. *See In re Bank of New York Derivative Litigation*, 320 F.3d 291, 301 (2d Cir.2003) (affirming denial of intervention as of right where proposed intervenor's interests were adequately protected by preexisting state litigation).

The Joint Venture's proposed representation by the same attorney as the Sureties provides additional evidence that the Sureties will adequately represent the Joint Venture's interests. *See, e.g., Carroll v. American Federation of Musicians of U.S. and Canada*, 33 F.R.D. 353, 353–354 (S.D.N.Y. 1963) ("Inadequate representation can hardly be claimed as the same attorney represents both the original plaintiffs and the proposed intervenors."); *H.K. Ferguson Co. v. Nickel*

*Processing Corp. of New York*, 33 F.R.D. 268, 272 (S.D.N.Y.1963) (denying intervention by the federal government, in part on the grounds that the United States Attorney was already representing the government contractor appearing as a defendant in that proceeding).

Finally, the Court is mindful of the additional burdens that intervention would impose on the original parties and the judicial system. As the Second Circuit stated in *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir.1984), "[t]he requirements for intervention embodied in Rule 24(a)(2) must be read ... with an eye to the posture of the litigation at the time the motion is decided.... [A]lthough the Rule does not say so in terms, common sense demands that consideration also be given to matters that shape a particular action or particular type of action." Application of common-sense rules in this case yields the conclusion that allowing intervention as of right in this case would, if Daidone litigates as vigorously in federal court as in the State Action, exponentially expand the complexity of the litigation related to this dispute, and the state and federal judicial resources dedicated to it, without achieving any measurable enhancement of any parties' rights. The Joint Venture will have its opportunity to vindicate its rights with respect to Daidone fully and fairly in the State Action. Consequently, the Joint Venture's motion to intervene as of right is denied.

## B. *PERMISSIVE INTERVENTION*

The Joint Venture alternatively claims that the Court should permit it to intervene pursuant to Fed.R.Civ.P. 24(b). That rule gives the Court discretion to grant a timely appli-

---

**5.** While *Holland* and *Huber Lathing* directly address joinder law rather than the law of intervention, both legal issues in this context evaluate whether prejudice will result to one of the parties—the surety in joinder law and the principal in intervention law—if the principal is excluded from the litigation. New York cases have made clear that no such prejudice to either party will result from the principal's exclusion, given the surety's ability to assert the principal's defenses on its behalf. *See Huber Lathing,* 517 N.Y.S.2d at 760 (concluding that joinder of a principal in a suit by a creditor was "not necessary to accord complete relief between the persons who are parties to the action"). Even if a principal is additionally entitled under the law of intervention to participate in litigation between the creditor and the surety where it possesses unique "personal" claims or defenses against the creditor or the surety, as described above, that fact does not entitle the principal to intervene where it lacks any such claims or defenses and can be assured that the surety will be able to assert any defenses to liability on the debt that the principal could assert itself.

cation for intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." The Rule further states that, "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

 While the Joint Venture's motion is both timely and factually related to the instant suit, the Court declines to grant the Joint Venture permissive intervention in order to avoid unduly delaying the adjudication of the rights of the original parties with respect to the Bonds. Permitting the Joint Venture to intervene would result in highly complex litigation if Daidone acts as would be expected and asserts a panoply of third-party counterclaims against the Joint Venture and potentially other parties, including U.S. & S, related to the PATH reconstruction effort. Where the dispute now centers around U.S. & S's performance of a single subcontract, post-intervention litigation may require far more extensive discovery and require a lengthier trial to adjudicate not only U.S. & S's relatively simple contract claim, but also Daidone's potential RICO counterclaims and assorted other counterclaims and cross-claims.

The availability of an alternative forum for those disputes, facilitated by the Joint Venture's own actions in bringing suit against Daidone in state court, ensures that the Joint Venture will have an adequate remedy against Daidone if U.S. & S should prevail in the instant action. *See In re Bank of New York,* 320 F.3d at 301; *Head v. Jellico Housing Authority,* 870 F.2d 1117, 1124–1125 (6th Cir.1989) (affirming denial of intervention where appellant had already filed a separate complaint in another federal forum, noting with approval courts' holding that "a charge of abuse of discretion in the denial of a motion for permissive intervention appears to be almost untenable on its face when an appellant has other adequate means of asserting her rights"); 6 James Wm. Moore, *Moore's Federal Practice* § 24.10[2][d] (3d Ed.2003) ("The effect of denial of permissive intervention is a relevant discretionary factor. If an adequate remedy is available to the applicant in another action, the effect of denying permissive intervention in an existing action is mitigated").

Consequently, the Court denies the Joint Venture's motion for permissive intervention pursuant to Fed.R.Civ.P. 24(b).

### III. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the motion of Yonkers Contracting Company, Inc., Tully Construction Co. Inc. and A.J. Pegno Construction Corp., d/b/a Yonkers/Tully/Pegno—a Joint Venture, to intervene in this action pursuant to Fed.R.Civ.P. 24 is hereby denied.

**SO ORDERED.**