SITEWORKS CONTRACTING
CORP., Plaintiff,

v.

WESTERN SURETY COMPANY and
U.W. Marx, Inc., Defendants.

No. 04 Civ. 9714(LMS).

United States District Court,
S.D. New York.

Nov. 14, 2006.

Thomas H. Welby, Paul Gregory Ryan, Welby, Brady & Greenblatt, LLP, White Plains, NY, for Plaintiff.

Stephen J. Rehfuss, Rehfuss, Liguori & Associates, P.C., Latham, NY, for Defendants.

**ORDER**

LISA MARGARET SMITH, Chief United States Magistrate Judge.

Plaintiff Siteworks Contracting Corporation (herein, "Plaintiff") commenced suit in this Court against Western Surety Company (herein, "Defendant Western") on De-

cember 10, 2004, for an alleged breach of contract. *See* Docket # 1, Plaintiff's Complaint (herein, "Comp.") at ¶ 3. This Court has subject matter jurisdiction over Plaintiff's suit against Defendant Western pursuant to 28 U.S.C. § 1332(a), as the Plaintiff and Defendant Western are diverse parties, and the amount in controversy, exclusive of costs and interest, is in excess of $75,000. *See* Comp. ¶ 4. Specifically, Plaintiff is a New York corporation with its principle place of business in New York, and Defendant Western is a South Dakota corporation. *See* Comp. at ¶¶ 6, 7. On March 10, 2005, U.W. Marx, Inc. (herein, "Defendant Marx") filed a motion to intervene in the present action as a matter of right pursuant to Fed.R.Civ.P. 24(a)(2). *See* Docket # 15, Motion to Intervene. Defendant Marx's motion to intervene, which was unopposed by the Plaintiff, was memo endorsed and granted by the Honorable Colleen McMahon, United States District Judge, on March 28, 2005. *See* Docket # 18, Memo Endorsement of Motion to Intervene. Defendant Marx averred that it should be allowed to intervene in the case as a matter of right so it could "defend its right as principal of the [payment] bond [sued upon by the Plaintiff], assert personal defenses to the allegations in Plaintiff's Complaint, [and] assert counterclaims against [Plaintiff] Siteworks." *See* Docket # 15, Affidavit of Attorney Stephen J. Rehfuss (herein, "Rehfuss Affidavit") at ¶ 13. After its Motion to Intervene was granted, Defendant Marx then filed an Answer to the Plaintiff's Complaint[1] in which it asserted general denials, eleven affirmative defenses, and four counterclaims against the Plaintiff. *See* Docket # 22, Answer of Defendant Marx (herein, "Marx Ans."). Shortly thereafter the parties consented to the un-

dersigned's jurisdiction for all purposes, including trial, pursuant to 28 U.S.C. § 636(c). *See* Docket # 20, Consent to Jurisdiction by a U.S. Magistrate Judge.

Following a thorough period of pretrial supervision, which included multiple pretrial conferences and a motion for summary judgment filed by the Defendants, the matter was calendared for a bench trial set to commence before the undersigned on November 13, 2006. My recent review of the record in this case in preparation for trial, however, leaves me with concerns as to the propriety of this Court's subject matter jurisdiction over Defendant Marx's four counterclaims against the Plaintiff. Specifically, I conclude that this Court lacks valid subject matter jurisdiction over Defendant Marx's counterclaims against the Plaintiff because both Plaintiff and Defendant Marx are New York residents, thus barring the Court from hearing the claims under its grant of diversity jurisdiction, and also because Defendant Marx's counterclaims are better understood as affirmative claims of relief asserted in the first instance against the Plaintiff that cannot be heard in this Court under the grant of supplemental jurisdiction contained in 28 U.S.C. § 1367(a). For the following reasons I conclude that Defendant Marx's motion to intervene was improvidently granted, and that because of a want of subject matter jurisdiction over Defendant Marx's counterclaims against the Plaintiff, the motion to intervene should have been denied and Defendant Marx should not have been made a party to this case.

## BACKGROUND

The basic facts of this case are as follows. Defendant Marx entered into a con-

---

**1.** Defendant Marx filed the Answer even though Plaintiff never interposed any causes of action directly against Marx. As noted *infra,* Marx's denials and defenses repeated those that had been submitted by Defendant Western.

tract with the Pelham Union Free School District whereby Defendant Marx "agreed to furnish all of the labor and material and perform all work required" for a construction project identified as the "General Construction Work School Additions and Reconstruction of Pelham Union Free School District" (herein, "the Project"). *See* Comp. at ¶¶ 1, 9. On March 4, 2004, Defendant Western, as surety, and Defendant Marx, as principal, "executed a payment bond guaranteeing the payment of all monies due to all persons furnishing labor, materials, supplies or equipment used in the prosecution of construction work pursuant to the contract between [Defendant] Marx and Pelham Union Free School District." *See* Comp. at ¶ 10. Defendant Marx and the Plaintiff entered into a subcontract on April 2, 2004, whereby Plaintiff agreed to serve as a subcontractor who would "furnish and install certain labor, materials and equipment associated with earthwork, site work, concrete work, sanitary sewer, storm sewer and water work for the Project." *See* Comp. at ¶ 2. Plaintiff asserts in its Complaint that it "fully performed its obligations under the [contract with Defendant Marx], except to the extent that its performance was hindered or stopped by U.W. Marx's acts and omissions...." *See* Comp. at ¶ 12. Plaintiff maintains that Defendant Marx's letter of September 29, 2004, informing it that Marx had to complete the work under the subcontract and that it would be charged for excess costs, was an improper termination under the terms of the subcontract. *See* Docket # 43, Decision and Order at p. 13. Believing that the subcontract was improperly terminated by Defendant Marx, Plaintiff filed suit against Defendant Western as a claimant under the payment bond Defendant Western held for Defendant Marx as its surety. *See* Comp. at ¶ 1. Plaintiff elected, however, only to sue Defendant Western, and did not commence suit against Defendant Marx as principal of the payment bond. Indeed, Plaintiff could not have included Defendant Marx as an original party to its suit filed in this Court, as such an action would have defeated diversity jurisdiction.

After service of the Complaint was effected on Defendant Western, Defendant Marx moved to intervene in the instant matter as a defendant pursuant to Fed. R.Civ.P. 24(a)(2). *See* Docket # 15, Motion to Intervene. Defendant Marx asserted that as principal of the payment bond sued upon by the Plaintiff, it had a right to intervene in the case because it had an interest in the subject matter of the litigation, and because Defendant Western was unable to adequately protect its interests. *See* Rehfuss Affidavit at ¶¶ 23–30. Defendant Marx also contended that "in order to protect its interest outside of this action, including claims for damages against [Plaintiff] Siteworks based upon its breach of contract that resulted in Marx terminating the contract, Marx would have to file a breach of contract claim against Siteworks in state court, based on the exact same case and controversy as alleged in the instant action." *See id.* at ¶ 31. Receiving no opposition to the motion, Judge McMahon granted Defendant Marx's motion to intervene as a matter of right as a defendant under Fed.R.Civ.P. 24(a)(2).

## DISCUSSION

A. *Subject Matter Jurisdiction Over Defendant Marx's Counterclaims*

 It is axiomatic that the federal courts are courts of limited jurisdiction, which is to say that a federal court must have a valid basis for subject matter jurisdiction over a party's claim or claims in order for the court to adjudicate the case or controversy. *See, e.g., Marshall v. Marshall,* —— U.S. ——, 126 S.Ct. 1735, 1741, 164 L.Ed.2d 480 (2006); *Gottlieb v.*

*Carnival Corp.,* 436 F.3d 335, 337 (2d Cir. 2006) ("federal courts are courts of limited jurisdiction which thus require a specific grant of jurisdiction.") (quotation omitted). Common grants of federal subject matter jurisdiction include diversity jurisdiction, 28 U.S.C. § 1332, federal question jurisdiction, 28 U.S.C. § 1331, and in certain circumstances, supplemental jurisdiction, 28 U.S.C. § 1367(a). As has been noted many times, the Federal Rules of Civil Procedure neither create nor deny federal subject matter jurisdiction, *see Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 370 and n. 7, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), and the court itself is under an obligation to address issues of subject matter jurisdiction *sua sponte* at any time. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (explaining that both a federal appellate court and a federal district court may raise the issue of subject matter jurisdiction on its own initiative).

■ Upon a review of the record in this case, the undersigned is not convinced that this Court has proper subject matter jurisdiction over Defendant Marx's counterclaims against Plaintiff. As both Plaintiff and Defendant Marx are New York residents, *see* Comp at ¶ 6 (residency of Plaintiff) and Rehfuss Affidavit at ¶ 18 (residency of Defendant Marx), the Court cannot hear Defendant Marx's counterclaims pursuant to its grant of diversity jurisdiction. Additionally, because Defendant Marx's counterclaims do not involve a federal statute or the U.S. Constitution, federal question jurisdiction is also unavailable. Thus, the Court must turn to its grant of supplemental jurisdiction in 28 U.S.C. 1367(a) in order to determine whether it has valid subject matter jurisdiction over Defendant Marx's state law counterclaims against the non-diverse Plaintiff.

Defendant Marx urges that this Court has valid subject matter jurisdiction over its counterclaims pursuant to 28 U.S.C. § 1367(a) because the counterclaims "are so related to claims in the action within [which the Court has] such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *See* 28 U.S.C. § 1367(a). Additionally, Defendant Marx posits that the limitation placed upon the Court's supplemental jurisdiction in § 1367(b) is inapplicable in this case because Defendant Marx is better classified as a defendant, and not as a plaintiff, and thus the plain language of § 1367(b) does not apply to its counterclaims against the Plaintiff. *See* Rehfuss Affidavit at ¶¶ 19, 20. Section 1367(b) provides in pertinent part that, "[i]n any civil action of which the district courts have original jurisdiction founded solely on section 1332 ..., the district courts shall not have supplemental jurisdiction under subsection (a) over claims ... by persons ... seeking to intervene as plaintiffs under Rule 24 [of the Federal Rules of Civil Procedure], when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332."

■ A review of the record and the relevant case law, however, leads me to conclude that Defendant Marx is better classified as an intervening plaintiff rather than an intervening defendant, and thus is barred from asserting its state law claims against the non-diverse Plaintiff under § 1367(b). When assessing the proper classification of a party to a suit, "the answer is to be found not in legal learning but in the realities of the record." *Indianapolis v. Chase National Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47 (1941). Accordingly, it is the Court's duty to "arrange the parties according to their sides

in the dispute," so as to ensure that there exists an actual and sustainable controversy between the parties. *Id.* (quoting *Dawson v. Columbia Trust Co.,* 197 U.S. 178, 180, 25 S.Ct. 420, 49 L.Ed. 713 (1905)). Although *Indianapolis v. Chase Bank* was concerned with the alignment of a party for the purposes of diversity jurisdiction, its discussion and concerns are equally applicable in a case such as this addressing the alignment of a party for purposes of determining whether or not there exists proper supplemental jurisdiction over state law claims asserted by a non-diverse intervening party under Fed.R.Civ.P. 24. When making this assessment as to a party's proper alignment in a case, the Second Circuit has directed that a court is to examine the entire record to discover the real interests of the parties. *See Maryland Casualty Co. v. W.R. Grace,* 23 F.3d 617, 623 (2d Cir.1993). "Hypothetical conflicts manufactured by skillful counsel must not control because such an approach would reintroduce the notion of gamesmanship so disparaged by the Supreme Court." *Id.*

Defendant Marx, as principal of the bond sued upon by Plaintiff, undoubtedly has an interest in the outcome of this litigation in that it does not want Defendant Western to pay the Plaintiff under payment bond. Defendant Marx's interest, however, is not a protectable interest in this case requiring its presence as a defendant. Plaintiff elected to sue Defendant Marx's surety, Defendant Western. Defendant Western, as surety, is equally capable of defending against the Plaintiff's claims as is Defendant Marx.[2] This equivalent capability is demonstrated by Defendant Marx's Answer, which is identical to the Answer filed by Defendant Western,

except for the assertion by Defendant Marx of four counterclaims against the Plaintiff. *Compare* Docket # 11, Answer of Defendant Western, *with* Docket # 22, Answer of Defendant Marx. Moreover, Defendants Western and Marx are both represented by the same counsel. *Id.* Because of the nature of the relationship between Defendants Western and Marx as surety and principal, respectively, and because the Plaintiff elected only to commence suit against Defendant Western, any potential judgment for the Plaintiff would only apply against Defendant Western as surety for Defendant Marx. *See, e.g., Union Switch & Signal, Inc. v. St. Paul Fire and Marine Ins. Co.,* 226 F.R.D. 485 (S.D.N.Y.2005) ("New York cases have made clear that suits such as the instant one, in which a surety but not the principal is sued by an alleged creditor, are common and permissible under New York law.") (citing 63 N.Y. Jur.2d Guaranty & Suretyship § 335). Defendant Western could then seek indemnification or contribution from Defendant Marx in a separate cause of action. *See id.* at 488 ("In the absence of contractual language to the contrary, principals are ordinarily obligated to indemnify their sureties for any of their obligations that are paid by the surety.") (citing *United States, to Use and Benefit of Foster Wheeler Corp. v. American Surety Co.,* 142 F.2d 726, 728 (2d Cir.1944)). Plaintiff, however, could not collect from both Defendant Western and Defendant Marx. Thus, from a reading of the entire record, I conclude that Defendant Marx is not subject to any direct liability to the Plaintiff as a consequence of the Plaintiff's claims in this suit. Defendant Marx's liability to Defendant Western, if any, is a separate matter governed by a separate agreement not before this

---

**2.** Because Defendant Western is equal to Defendant Marx in its ability to defend against Plaintiff's claim, intervention as of right under Rule 24(a)(2) is not available to Defendant Marx, though it could probably seek to intervene by permission under Rule 24(b).

Court at this time, and does not counsel in favor of a finding that Defendant Marx is a defendant to the allegations averred in the Plaintiff's Complaint. *See, e.g.,* MOORE'S FEDERAL PRACTICE § 106.46 ("Under judicial construction of Section 1367, a party may not intervene as a defendant solely for the purpose of asserting a claim against a nondiverse plaintiff. The intervenor must be potentially liable to the plaintiff on the primary claim in order to be treated as a defendant to whom supplemental jurisdiction may apply under Section 1367(b)."); *MCI Telecommunications v. Logan Group,* 848 F.Supp. 86, 88–89 (N.D.Tx.1994) (intervening party who was not subject to liability under plaintiff's complaint defined as third-party plaintiff who was barred from asserting state law claims against non-diverse original plaintiff under § 1367(b)).

Defendant Marx has conceded, in its most recently filed "Jurisdictional Brief," submitted after the undersigned raised the issue with counsel, that it is not a proper defendant: "Siteworks has never pursued a claim against Marx, only against Western Surety[.]" *See* Defendant Marx's Jurisdictional Brief dated November 9, 2006, at p. 3. Defendant Marx's position in that regard is underscored by its subsequent description of itself as "an intervening third party," rather than an intervening defendant. *Id.* Even in the original motion to intervene, Defendant Marx admitted that it "would be asserting claims against Siteworks in the technical capacity of a plaintiff," though it argued that this "is irrelevant, as it is the duty of the Court to align the parties in the action according to their interests in the matter in controversy." *See* Rehfuss Affidavit at ¶ 19.

Defendant Marx relies upon *Viacom International, Inc. v. Kearney,* 212 F.3d 721 (2d Cir.2000) for its argument that the grant of supplemental jurisdiction

contained in § 1367(a) gives this Court valid subject matter jurisdiction over its counterclaims against the Plaintiff and that § 1367(b) does not apply in this case. Specifically, Defendant Marx hones in on the language of the *Viacom International* opinion that states " § 1367(b) reflects Congress' intent to prevent original plaintiffs—but not defendants or third parties—from circumventing the requirements of diversity." *Viacom International,* 212 F.3d at 726–27 (citing legislative history). Other courts in this District have relied upon this very language in holding that valid supplemental jurisdiction exists over the counterclaims of a non-diverse intervening defendant against the named non-diverse plaintiff. *See, e.g., Consolidated Edison, Inc. v. Northeast Utilities,* 01 Civ. 1893(JGK) 2004 WL 35445 at *4 n. 3 (S.D.N.Y. January 7, 2004); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.,* 02 Civ. 7689(HB) 2003 WL 21254420, at *4 (S.D.N.Y. May 30, 2003). I conclude, however, that those courts, like Defendant Marx, have overlooked the factual context of *Viacom International* in reaching those results. The operative language that Defendant Marx and the *Merrill Lynch* and *Consolidated Edison* courts have overlooked is *Viacom International's* explanation of *why* Congress enacted § 1367(b)'s limitation: "[b]y contrast, 'because defendants are involuntarily brought into court, their claims are not deemed as suspect as those of the plaintiff, who is the master of his [or her] complaint.'" *See Viacom International,* 212 F.3d at 727 (quoting *United Capitol Ins. Co. v. Kapiloff,* 155 F.3d 488, 493 (4th Cir.1998)). Differing from *Viacom International,* where the Second Circuit held that § 1367(b) did not bar a non-diverse fourth-party defendant from asserting counterclaims against the plaintiff after the fourth-party defendant was involuntarily drawn into the

lawsuit through a third-party complaint, Defendant Marx affirmatively petitioned this Court for permission to enter the litigation for the sole purpose of asserting its counterclaims against the non-diverse Plaintiff. Defendant Marx's voluntary act of submitting itself to the Court for the purposes of asserting affirmative claims of relief against the non-diverse Plaintiff is markedly different than the involuntary impleader of the fourth-party defendant in *Viacom International* who attempted to assert counterclaims against the non-diverse named plaintiff after it was brought into the lawsuit. Thus, *Viacom International* is distinguishable from this case.[3]

Allowing a party to identify itself as a defendant, when it cannot be held liable on the claims pled in a plaintiff's complaint, and to permit it to maintain a cause of action against a non-diverse party for the sole purpose of seeking monetary relief when it would otherwise be prohibited from bringing the suit in federal court in the first instance because it could not meet the diversity requirement in § 1332(a), is just as troubling as the situation in *Owen Equipment*, the precursor to Congress' enactment of § 1367(b). *Owen Equipment* addressed whether a plaintiff could commence suit only against a diverse party under § 1332(a) and then amend its complaint to include claims against a non-diverse third-party defendant impleaded into the lawsuit by the originally named diverse defendant. *See Owen Equipment*, 437 U.S. at 374–75, 98 S.Ct. 2396. The Court held that allowing a party to expand the federal district court's statutory grant of jurisdiction through such maneuvers was impermissible. *See id.* ("a plaintiff could

defeat the statutory requirement of complete diversity by the simple expedient of suing only those defendants who were of diverse citizenship and waiting for them to implead nondiverse defendants.... Congress' requirement of complete diversity would thus have been evaded completely."). The present situation is analogous to the loophole highlighted and closed in *Owen Equipment.* Congress has since codified *Owen Equipment's* holding, which disfavored tactics that resulted in an impermissible expansion of federal subject matter jurisdiction in § 1367(b). Allowing Defendant Marx to enter this case and assert claims against the non-diverse Plaintiff would be a return to such maneuvers, which have been foreclosed both by the Supreme Court and by Congress.

In sum, even assuming that Defendant Marx could intervene as of right under Rule 24(a)(2), or seek permission to intervene under Rule 24(b), this Court may not exercise supplemental jurisdiction over Marx's claims, because to do so would violate § 1367(b).

B. *Implications of Claim and Issue Preclusion*

Defendant Marx argues that permitting it to intervene under Rule 24(a)(2) and considering its counterclaims against the Plaintiff under supplemental jurisdiction is in the interests of judicial economy. It also argues that Plaintiff Siteworks has asserted specific claims regarding the contract between Defendant Marx and Plaintiff Siteworks which would, if decided on the merits, potentially harm Defendant Marx, and that Defendant Marx is uniquely positioned to interpose defenses unavail-

---

**3.** Although this case is distinguishable from *Viacom International,* I do not doubt that *Viacom International's* holding would be directly on point had U.W. Marx been impleaded into the lawsuit by Defendant Western

under Fed.R.Civ.P. 14 as was the fourth-party defendant in *Viacom International. See* 212 F.3d at 724. In that circumstance Marx's counterclaims against the Plaintiff would not have violated the limitation in § 1367(b).

able to Western Surety.[4] *See* Rehfuss Affidavit at ¶¶ 28–31. Even accepting these arguments as true, they only support intervention under Rule 24, they do not directly rebut the Court's analysis under § 1367(b). These equitable arguments are only relevant to the extent that they may influence the categorization of Marx as a plaintiff or defendant.

At least two of the counterclaims asserted by U.W. Marx in its proposed Answer share factual similarities with the breach of contract claim advanced by the Plaintiff in the underlying cause of action. *See* Marx Ans. at ¶¶ 27, 32 (seeking damages against Plaintiff for delay caused by Plaintiff's nonperformance under the subcontract and for additional expenses incurred by Marx to complete work). The commonality between the Plaintiff's Complaint and Defendant Marx's counterclaims, and the impact of this Court's adjudication of the Plaintiff's breach of contract claim, both suggest that this Court's resolution of the Plaintiff's breach of contract cause of action may have some impact on the viability of Defendant Marx's counterclaims. Such potential impact, however, does not change the analysis of Defendant Marx's position as a plaintiff in this case.

If this Court were to find for the Plaintiff on the underlying breach of contract cause of action—that is to say that Defendant Marx improperly terminated Plaintiff Siteworks under the terms and provisions of the subcontract—this Court has found no authority holding that Defendant Marx would then be precluded from seeking damages against the Plaintiff in a subse-

quent state court action. In such a subsequent state court action, where U.W. Marx would be the plaintiff and Siteworks would be the defendant, an inconsistent verdict could be rendered—that is, it could be found that U.W. Marx properly terminated Siteworks under the terms of the subcontract and is therefore entitled to damages as delineated by the terms of the subcontract. Likewise, if this Court were to find in favor of Defendant Western in the suit between Siteworks and Western—i.e., that the Plaintiff breached the terms of the subcontract—there also exists the possibility of inconsistent verdicts because no authority has been found or proffered that would establish that collateral estoppel would apply to a separate state court action commenced by U.W. Marx against Siteworks. *See T & G Constructors, Inc., v. Pro–Tech Conditioning and Heating Service, Inc.,* 834 So.2d 258, 260 (Fla.Dist. Ct.App.2002) ("In this case . . . the suit is being brought by the principal [U.W. Marx] against the successful creditor [Siteworks]. We have found no case in which the doctrine of collateral estoppel was applied to give preclusive effect to issues litigated in a prior action between the surety [Defendant Western] and the creditor [Siteworks], in a later suit between the principal [U.W. Marx] and the creditor [Siteworks]. . . . By way of dictum . . . this court [has] indicated no collateral estoppel effect would be given to a judgment in favor of a subcontractor [Siteworks] and against the surety [Defendant Western] in a separate action brought by the contractor [U.W. Marx] against the subcontractor [Siteworks].").[5]

---

4. Defendant Marx makes this argument even though the sole difference between its Answer and Defendant Western's Answer were the counterclaims. All the Affirmative Defenses asserted by Marx were also asserted by Defendant Western.

5. The District Court of Appeal ultimately held in *T & G Constructors* that issue preclusion prevented the general contractor from re-litigating the issue of liability against the subcontractor because of the presence of an indemnification agreement between the general contractor and the surety which assigned all

The limited jurisdiction of this Court, however, is not expanded merely for judicial economy or to avoid inconsistent verdicts. While Defendant Marx's interest in the outcome of the litigation between Siteworks and Western puts it in a parallel position to Defendant Western, it does not cause it to be directly aligned with Defendant Western as a defendant. For purposes of this litigation, Defendant Marx bears no potential court-ordered liability; there is no basis for concluding that Western is unable to defend the action adequately, and the sole reason for Marx to participate is as a claimant, seeking judgment on its behalf. The results here will not preclude Marx from fully litigating its claims elsewhere. Under all of these circumstances § 1367(b) prevents Defendant Marx from pursuing its counterclaims in this Court.

### CONCLUSION

For the foregoing reasons, I conclude that Defendant Marx should be classified as a third-party plaintiff seeking to assert affirmative claims for monetary damages against the Plaintiff/third-party defendant Siteworks in its motion to intervene. Jurisdiction cannot lie under 28 U.S.C. § 1332, because Marx and Siteworks are both New York corporations; jurisdiction cannot lie under 28 U.S.C. § 1331, as the suit does not implicate a federal question. Additionally, I conclude that subject matter jurisdiction would not be appropriate under 28 U.S.C. § 1367(a) because of the limitation in 28 U.S.C. § 1367(b) barring a plaintiff— in this instance, U.W. Marx—from assert-

ing claims it would otherwise be unable to maintain under the court's grant of diversity jurisdiction. For these reasons, I conclude that this Court lacks valid subject matter jurisdiction over Marx's counterclaims against the Plaintiff, that Marx's motion to intervene was improvidently granted, and that the motion to intervene is denied for a want of subject matter jurisdiction. Because my order denying U.W. Marx's motion to intervene is a final order that is immediately appealable, *see S.E.C. v. Everest Management Corp.*, 475 F.2d 1236, 1238 n. 2 (2d Cir.1972), I will grant U.W. Marx's motion to stay the trial pending Marx's expected appeal to the Second Circuit in this case.

**SO ORDERED.**

---

rights and causes of action to the surety. *See T & G Constructors,* 834 So.2d at 261. This Court has been informed of no such agreement between U.W. Marx and Defendant Western in this case. The Court also noted that the general contractor should have moved to intervene in the action between the creditor and the surety. *Id.* at 260. Although this urging may be apropos in a state court, which is a court of general jurisdiction, for the reasons articulated *supra,* such an admonition lacks the same level of poignancy when presented in the context of a federal court, a court of limited jurisdiction, hearing a case on the basis of diversity jurisdiction.